Territory *v.* Pyle.

TERRITORY OF OREGON, *ex rel.* M. G. KENNEDY, *v.* THOMAS PYLE.

*Action at law for usurping the office of Sheriff of Jackson County.—Reserved from Jackson.*

1. In case of a contested election the office will be given to him who has the right by the votes of the electors.
2. The legislature can change the term of an office, after it is filled, from two years to one.

THIS cause was reserved for the decision of this court, upon an agreed state of facts, in the place of a special verdict. From this it appears that at the general election held on the 6th day of June, A. D. 1853, one William Galley received four hundred and eighty-three votes for the office of sheriff for Jackson County—the relator received four hundred and eleven votes for the same office. Subsequently, the relator contested the election of Galley, under the act of February 3d, 1851, to provide for and regulate general elections, on the ground that Althouse, Brownsville and Sucker Creek precincts were situated south of the forty-second parallel of north latitude, and consequently not in the county of Jackson. The three justices, who by the statute were authorized to decide the contest, determined, on the testimony of a sea-captain, that those precincts were south of the forty-second parallel, and gave the office to the relator. The relator was then duly qualified, and entered upon the discharge of the duties of the office. By an act of Assembly, passed on the 31st day of January, 1854, the electors of Jackson County were authorized to elect a sheriff at the next election, on the 6th of June, 1854. At this, the relator and the defendant were candidates for the office of sheriff. Pyle received four hundred and eighty-nine votes; the relator three hundred and twelve votes. Pyle was duly qualified and entered upon

the discharge of the duties of the office.   This action was then brought by the prosecuting attorney, on the relation of Kennedy, to oust Pyle from the office.

*Boise & Chinn*, for relator.

*L. F. Mosher*, for defendant.

DEADY, J.   The first question raised to be determined by the court is the right of the relator to the office, independent of the act of Assembly under which the election was held, when Pyle, the defendant, was elected.   It is admitted that the relator was sheriff *de facto* prior to the election of Pyle. He was in the office by color of right, and exercising the powers and duties of it.   So far as the rights of third persons or the public were concerned, his acts were as binding as if he had been an officer *de jure*.   (*Burke* v. *Elliott*, 4 *Iredell*, 355 ; *Gilliam* v. *Reddick*, 4 *Ib.* 368 ; *Schlencker* v. *Risley*, 3 *Scam.* 483.)   But in this proceeding the question is directly raised, and the relator is a party.   In his complaint he alleges that he was " duly elected."   This is denied by the defendant. " Where suit is brought against individuals, who justify as public officers, they must show themselves officers *de jure*." (*Blake* v. *Sturtevant*, 12 *N. Hamp.* 567 ; *Schlencker* v. *Risley*, 3 *Scam.* 483.)

And, by a parity of reasoning, it matters not whether the party claim a right as party plaintiff or defendant.   If he claims the right in question by virtue of being a " public officer," he must show that he is such officer *de jure* before he can maintain such action or sustain such defence.   By the agreed case it is admitted that the relator was not elected at the general election, held in June, A. D. 1853 ; but that one Galley received a majority of the legal votes cast at that election for the office of sheriff.   But it is insisted that the determination of that question on the contest, by the three justices, is final and conclusive, and that this court cannot go behind that determination, however the fact may be.   The

Territory *v.* Pyle.

inquiry by the justices is in the nature of an *inquisition.* By the law they are made part of the machinery of election, for the purpose of ascertaining who has received a majority of the votes, in case the contingency of a contest should arise between two candidates for any county office. Where the right to the office is the question directly in issue, it is merely *prima facie* evidence of that right, and may be overcome by the party who denies such right. Upon these principles, it is not a question of doubt (the facts being admitted) in whose favor the law and the right is, upon the first question presented by the record. The right to the office is not in the relator. The admitted facts overcome the *prima facie* case made by the inquest of the justices, and show that that inquest was erroneous; that the precincts thrown out were not south of the forty-second parallel, but north of it, and, consequently, in the county of Jackson; and, therefore, that the relator was not, in point of fact, " duly elected" at the general election in 1853, as he alleges in his complaint.

The second question is the validity of the act of Assembly under which the defendant claims to have been elected. For the relator, it is contended that the office is a franchise—a property of which consists in the fees and emoluments of the office. That, by election, the office was vested in him for a term of two years, and it was not competent for the legislature to shorten his term of office, by providing for the election of a successor before the expiration of that time. We think differently. Public offices are created for the convenience of the public, and not the officer. It is competent for the legislature to abolish such offices when created, to shorten or lengthen the term of office, or to increase or decrease the compensation. This position, of course, is to be understood with reference to such offices as are not protected from such interference by constitutional inhibitions upon the legislative power. In this territory there is no limitation upon the legislative power in this respect, and the subject rests in the sound discretion of the legislature. If, in the exercise of that discretion, they deem it proper to pass a law

restricting the term of office for sheriff to one year, the court cannot review that discretion. It will make no difference whether the law in question be general and apply to the whole territory, or whether it be special and apply to one county. That is the case.

Admitting the relator to have been " duly elected," after such election the legislature cut down the term of office from two years to one. If the legislature had reduced the fees of the office one-half, instead of the term of office one-half, the effect as to the relator would have been the same, so far as pecuniary injury is concerned. No one will contend for a moment that, in the absence of any constitutional inhibition, it was not competent for the legislature to have thus reduced the fees. Yet, if the position of the relator's counsel be correct, that the office is a franchise, the property of which (consisting of the fees and emoluments) is vested by election in the relator, it is not perceived wherein lies the difference in the two instances, so far as the power of the legislature is in question. If it is competent to reduce the value of the office one-half, by decreasing the officer's emoluments, it is equally competent to do the same thing by changing the term of office from two years to one.

Although some of the older cases and decita of elementary writers may be opposed to the doctrine we have announced, touching the nature of public offices and the power of the legislature over them, it is sustained by the more modern decisions, by the common practice of nearly all the legislative bodies of these States, and the genius and spirit of our institutions.

Judgment for the defendant.