# THE SUPREME COURT

#### OF

# OREGON.

## MARCH TERM, 1891.

[Filed March 23, 1891.]

## THE STATE OF OREGON EX REL. RICHARD EVERDING v. JOSEPH SIMON.

CONSTRUCTION OF STATUTES — LEGISLATIVE INTENTION.— In the construction of a statute the cardinal point is to ascertain the intention of the legislature, but this intention must be ascertained from the words used, in connection with surrounding circumstances.

AMENDMENT— ORIGINAL ACT.— Where a statute has been amended, resort may be had to the original act, to explain any ambiguity which may exist in the language of the amended act but not to supply omissions.

REVISION — CLAUSES OMITTED.— Statutes and parts of statutes omitted from a revision are to be considered annulled and cannot be revived by construction.

ELECTION — EXISTING LAW.— An election, in order to be valid, must be held in pursuance of some law authorizing it, in force at the time. The provision for the general election in the city of Portland does not authorize the election of any officer of the city, unless special provision is made by law, either directly or by implication, for the election of such officer for the particular term to which he is seeking to be elected.

CONSTRUCTION— LANGUAGE OF STATUTE — LEGISLATIVE INTENT.— Courts cannot, even in order to give effect to what they may suppose to be the intention of the legislature, put upon the provisions of a statute a construction not supported by the words.

DEFECTIVE STATUTE.— When the legislature has omitted by mistake or otherwise to make the necessary provisions to carry out its intention, the court cannot by construction supply the omissions.

ABOLISHMENT OF OFFICE— SUCCESSOR.— Where, while a person is rightfully in possession of a public office, the legislature abolishes the term and mode of electing his successor, the public necessities requiring that the office be in possession of some one with authority to discharge its duties, he continues to hold it until he shall be superseded by proper legislative action.

CONSTITUTIONAL LAW — CONTINUATION IN OFFICE.— Under the provisions of section 1 of article XV of the constitution, a member of the board of police commissioners of the city of Portland is authorized to hold the office until his successor is duly elected or appointed under some existing provision of the law.

Multnomah county: E. D. SHATTUCK, Judge.

Plaintiffs appeal. Affirmed.

*W. L. Boise,* and *John H. Hall,* for Appellants.

The presumption is, that the legislature does not intend to make any alterations in the law beyond what it explicitly declares, either in express terms, or by unmistakable implication; or in other words beyond the immediate scope and object of the statute. In all general matters beyond, the law remains undisturbed. (Endlich on Statutes § 340; *Ham* v. *Boston Board of Police,* 142 Mass. 90; *People* v. *Potter,* 47 N. Y. 381; *People* v. *Brenham,* 3 Cal. 487; *Wright* v. *Adams,* 45 Tex. 134.)

It is well settled by authority that an amendment repeals only those provisions of the original act which it leaves out. (*Ely* v. *Horton,* 15 N. Y. 597; *Stingle* v. *Nevel,* 9 Or. 62.)

While the legislature may provide by law whether such offices as those of the police commissioners shall be filled by popular election or executive appointment, and also the mode thereof, it cannot make the appointments itself. (*State* v. *Denny,* 118 Ind. 382; *City of Evansville* v. *State,* 118 Ind. 426; *State* v. *Denny,* 118 Ind. 449; *State* v. *Kennon,* 7 Ohio St. 560.)

The office of police commissioner is, unquestionably, an office within the meaning of section 2, article XV, of the constitution, wherein it is declared that the legislative assembly shall create no office the tenure of which is longer than four years. (*David* v. *Water Com.* 14 Or. 117; *Shelby* v. *Alcorn,* 36 Miss. 273, 72 Am. Dec. 169.)

But the universal rule of construction elsewhere is that no office is held by a vested tenure, which is not created by, and the tenure of which is not fixed by the constitution itself. The legislature has complete control over offices which are not created and regulated by the constitution. (*Long* v. *The Mayor,* 81 N. Y. 425; *Prince* v. *Skillin,* 71 N. C. 366, 36 Am. Rep. 325.)

*A. F. Sears*, for Respondent.

The legislature may, by omitting to provide a method of electing successors, continue persons in office; and in enacting that the present incumbents shall continue in office until their successors are elected and qualified, it does not follow as a consequence either that such persons would hold office perpetually or for life, or that a vacancy is created that can be filled by election. (*The People* v. *Woodruff*, 32 N. Y. 355.)

The legislature, in the absence of constitutional limitation, may create and abolish offices, add to or lessen their duties, abridge or extend the term of office, and increase, diminish or regulate the compensation of officers at its pleasure. (Dillon on Mun. Corp. §§ 229, 168, 33, 54; Cooley's Const. Lim. (4th ed.) 231; *Territory of Oregon* v. *Pyle*, 1 Or. 149; *People* v. *Batchelor*, 22 N. Y. 128; *Bryan* v. *Cattell*, 15 Iowa, 538.)

A municipal corporation cannot, without express authority from the charter, create an officer or elect to office. (*Mayor* v. *Harrison*, 30 N. J. L. 73.)

The office of police commissioner is not such a one as the constitution provides shall not exceed in tenure four years; nor does the act in question undertake to create an office whose tenure exceeds four years. (*David* v. *Portland Water Com.* 14 Or. 98; *People* v. *Stratton*, 28 Cal. 383; *People* v. *Batchelor*, 22 N. Y. 128; *State* v. *Harrison*, 113 Ind. 434, 3 Am. St. Rep. 663.)

The legislature, under proper limitations, has a right to change, modify, enlarge and restrain public corporations which exist only for public purposes, such as counties, cities and towns. (*Marietta* v. *Fearing*, 4 Ohio, 427; 2 Kent Com. *305.)

Political powers conferred upon a corporation for the local government of the place may be abrogated by the legislature either by general or special act altering the powers, and no individual member of the community can object to such an act altering, modifying or abrogating any power or franchise conferred upon the corporation. (*People* v. *Morris*, 13 Wend. 325; *Sloan* v. *State*, 8 Blackf. 364.)

If there is no legal vacancy, any election held is illegal and void. Even if every voter in the city had voted for police commissioner it would have made no difference. (*Com.* v. *Baxter*, 35 Pa. St. 264.)

It has never been contended that a person could make title to an office through the popular vote, unless such vote was cast in pursuance of legislative regulation and authority, and the efficiency given to the act of casting a ballot is derived from the law-making power and other legal enactments. (*McKune* v. *Weller*, 11 Cal. 61; *People* v. *Johnston*, 6 Cal. 673.)

Where a *de jure* officer holding over until his successor is duly elected and appointed is in office in fact after his term has expired, there is no vacancy. (*State ex rel.* v. *Howe*, 25 Ohio St. 588, 18 Am. Rep. 321; *State ex rel.* v. *Davis*, 45 N. J. L. 390; *People ex rel.* v. *Hammond*, 66 Cal. 654.)

The tenure and term of office of the members of the board of police commissioners of the city of San Francisco is almost identical with that of the city of Portland board. (*Staude* v. *Election Board*, 61 Cal. 313; *Heinlen* v. *Sullivan*, 64 Cal. 378.)

Where an act has been passed by the legislature, signed by the proper officers of each house, approved by the governor and filed in the office of the Secretary of State, it constitutes a record which is conclusive evidence of the passage of the act as enrolled. (*State* v. *Swift*, 10 Nev. 176, 21 Am. Rep. 721; *Pangborn* v. *Young*, 32 N. J. L. 29; *Sherman* v. *Story*, 30 Cal. 253, 89 Am. Dec. 93; *Att'y-Genl.* v. *Rice*, 64 Mich. 386.)

BEAN, J.— This case involves a controversy between the relator Richard Everding and the respondent Joseph Simon concerning the right to exercise the office of police commissioner of the city of Portland. The facts are these: In 1885, section 72 of the charter of the city of Portland was so amended as to provide that the police force of the city shall be appointed and organized by three commissioners, and prescribing the qualifications and duties of these officers. This act provides that the first three commissioners shall be appointed by the governor, and shall hold their office for

one, two and three years, respectively, from the first Monday in July, 1886, their respective terms to be determined by lot, and, commencing with the general election to be held in the city on the third Monday in June, 1887, there shall be elected annually one commissioner, who shall hold his office for three years and until his successor is elected and qualified; that all vacancies shall be filled by appointment made by the mayor with the consent of a majority of the common council, and that the commissioners shall take the oath of office required of other city officers and enter upon their duties within ten days after their appointment by the governor, or on the first Monday in July succeeding their election, when elected by the people. The respondent was appointed by the governor one of the commissioners provided by the act, and in the allotment of terms secured the three years term. In 1889, and before his term had expired, the legislature amended the act of 1885 by providing "that section 72 be amended so as to read as follows". The section as amended is substantially the same as the former act, except there is omitted therefrom all the provisions concerning the appointment by the governor, term of office and time and place of election of these officers, and in lieu thereof the following inserted: "The police commissioners now in office shall hold their respective offices until their successors are elected and qualified." It also limits the mayor's power of appointment to vacancies caused by death or resignation.

At the general election for city officers in June, 1889, the relator was a candidate for police commissioner, and as such candidate, received all the votes cast for said office, there being no opposing candidate. He afterwards duly qualified and demanded of respondent the possession of the office, which was refused, hence this proceeding.

By the act of 1889, the office of police commissioner remained with its duties clearly defined, but with no term fixed, and no provision for an election or appointment to the office, except an appointment by the mayor in case of

a vacancy occurring by death or resignation. But we are urged to supply these omissions by construction. It is claimed that the language of the act of 1889 "that the commissioners now in office shall hold their respective offices until their successors are elected and qualified," and that "the commissioners shall take the oath of office required of other city officers, and enter upon the discharge of their duties on the first Monday in July succeeding their election," evinces an intention on the part of the legislature that the successors of the commissioners then in office should be elected by the people, and that in order to carry out such intention recourse should be had to the act of 1885 to supply the omission. The rule is unquestioned that in the construction of a statute the cardinal point is to ascertain the intention of the legislature, but it is just as well settled that this intention must be ascertained from the words used in connection with the surrounding circumstances. For the purpose of explaining any ambiguity that may exist in the language of the act of 1889, resort may be had to the act of 1885, sought to be amended; but the parts of the former act omitted in the revision cannot be supplied under the guise of construction. The rule seems to be that statutes and parts of statutes, omitted from a revision, are to be considered annulled and cannot be revived by construction. They cannot be read into the latter statute so as to restrict its operation, and this, although it seems likely that the omissions were unintentional. (Endlich on Int. of Stat. §§ 202, 384; *Woodbury* v. *Berry,* 18 Ohio St. 456.) All the provisions of the act of 1885 fixing the term of office of police commissioner and providing for an election for such office, are omitted from the act of 1889, and this court cannot assume that provisions of such vital and far-reaching importance were unintentionally omitted. (*State ex rel.* v. *Clark,* 57 Mo. 25.) It seems more probable from the manner in which the omissions occurred and the substituted language that the legislative act was intentionally and deliberately done, with a design to insert the proper provisions in some

other part of the statute. The term of office is not fixed by the act of 1889 nor is there anything in the language from which the length of such term can be inferred. The three years term provided by the act of 1885 has been omitted in the amendment, and must therefore be considered repealed. If the court should undertake, by any possible construction of the language "until their successors are elected and qualified," to ascertain the length of the term intended, what term would it declare? Not three years, the former term, because that has been expressly abolished, and the legislature has thereby indicated an intention to make some change in the length of the term, or at least we must conclude that it so intended.

It will readily be perceived, then, that this omission cannot be supplied by the court without assuming the functions of the law-making power, and this a court cannot do. It is our legitimate province to interpret legislation, but not to supply omissions. Nor do we think there is anything in the language of the act of 1889 that can be construed to authorize an election for the office in controversy. It is provided, it is true, "that the commissioners now in office shall hold their respective offices until their successors are elected and qualified," and that "the commissioners shall enter upon the discharge of their duties on the first Monday in July succeeding their election"; but this does not in any way authorize an election. It may and perhaps does indicate an intention on the part of the legislature that such officers should be elected, but unless some provision is made for carrying out such intention it is of no avail. An election in order to be valid must be held in pursuance of the provisions of some law authorizing it, in force at the time. There is no inherent reserved power in the people to hold an election. (*People* v. *Bull,* 46 N. Y. 57, 7 Am. Rep. 302; *State* v. *Jenkins,* 43 Mo. 261; *People ex rel.* v. *Johnston,* 6 Cal. 673; *Matthews* v. *Board,* 34 Kan. 606; *State ex rel.* v. *Sims,* 18 S. C. 460.) This rule was recognized in the act of 1885, and the time and place of the election provided, but the act of 1889 contains no such

provision, nor does it contain anything from which it can be inferred.

Our attention has been called to section 11 of the charter of the city of Portland, which provides for the annual city election. This is only a provision for the general election, and certainly does not authorize the election of any officer of the city, unless special provision is made by law, either directly or by implication, for the election of such officer for the particular term to which he is seeking to be elected. (*Sawyer* v. *Haydon,* 1 Nev. 75; *McKune ex rel.* v. *Weller,* 11 Cal. 49.)

As we have already seen, there is no provision of law for the election of police commissioner. If the language of the act of 1889 should be so construed as to authorize an election, at what time must such election be held? At the time the relator claims to have been elected? If so, upon what theory? Certainly not because it was the general election for city officers. The act of 1885 provided an election for this office at the general election, and as we have already seen, this provision was annulled or repealed by being omitted from the act of 1889. If any inference is to be drawn from this omission, it must be that the legislature intended, if it intended an election should be held at all, it be held at some other time, else why should this provision have been omitted? And, again, if an election could be had at all, it must have been immediately preceding the expiration of respondent's term of office; and when did his term expire? We look in vain to the law as it existed in June, 1889, for an answer. It is true, respondent was appointed at a time when the term was fixed at three years, but before the expiration of his term the legislature repealed that provision, so that at the time the relator claims to have been elected no term for the office was fixed by law. That the legislature had the right to change the term of the office will not be denied. (*Territory ex rel.* v. *Pyle,* 1 Or. 149.) These suggestions show the impossibility of so construing the law as to authorize an election without interpolating

into it express and positive provisions not inserted by the legislature. It may be admitted that the language of the act of 1889 shows that the legislature contemplated that the successor of the respondent should be elected, and a comparison of the provisions of this act with the provisions of the section intended to be amended suggests the conjecture, if it does not convince us of the fact, that the omission to provide for the term of office and election of these officers must have been unintentional.

But whatever may have been the intention of the legislature, it failed to carry it into effect. The inference we draw from the language of the act is not that the legislature thereby gave, even by implication, any power to the people to elect police commissioners, but rather intimated an intention to do so—an intention which it failed to carry out. Courts "must not, even in order to give effect to what they may suppose to be the intention of the legislature, put upon the provisions of a statute a construction not supported by the words, even although the consequences should be to defeat the object of the act." (Smith's Stat. Cons. § 714.) This is a case, it would seem, where the legislature has omitted by mistake or otherwise to make the necessary provisions to carry out its intention, but we cannot by construction supply these omissions. As was said by DAVIES, J., "It is always competent for the legislature to speak clearly and without equivocation, and it is safer for the judicial department to follow the plain and obvious meaning of an act, rather than to speculate upon what might have been the views of the legislature in the emergency which may have arisen. It is wiser and safer to leave to the legislative department to supply a supposed or actual *casus omissus* than to attempt to do so by judicial construction." (*People* v. *Woodruff,* 32 N. Y. 364.) Courts cannot supply omissions in legislation, nor afford relief because they are supposed to exist. To adopt the language of Mr. Justice WOODS, in *Hobbs* v. *McLean,* 117 U. S. 579, "when a provision is left out of a statute, either by design or mistake of the legislature, the courts have no

power to supply it. To do so would be to legislate and not to construe." "We are bound," said Justice BULLER, in *Jones* v. *Smart*, 1 T. R. 44, "to take the act of parliament as they have made it; a *casus omissus* can in no case be supplied by a court of law, for that would be to make laws; nor can I conceive that it is our province to consider whether such a law that has been passed be tyrranical or not"; and Mr. Justice STORY, in *Smith* v. *Rines*, 2 Sumn. 354, observes: "It is not for courts of justice *proprio marte* to provide for all defects or mischiefs of imperfect legislation." (*King* v. *Burrell*, 12 A. & E. 460; *Hammond* v. *Eiffe*, 3 Q. B. 910; *Bloxam* v· *Elsee*, 6 B. & C. 169; *Bartlett* v. *Morris*, 9 Port. 286.) We have here, then, a case where the office of police commissioner of the city of Portland was created by a law fixing the term and providing for the appointment of the first incumbents and the election of their successors, but before the expiration of respondent's term the law was so changed by the legislature, either by mistake or design, that no provision remains fixing the term of office or providing for the election of his successor, leaving him in possession of the office with its duties devolving upon him; yet, despite this condition of things, the relator claims to have been elected at the expiration of respondent's term, as originally provided, and this brings the case squarely within *People* v. *Mathewson*, 47 Cal. 442.

In September, 1871, Rosenfeld was by the state at large elected state harbor commissioner of the state of California for the term of four years, from December 1, 1871, and served until May 23, 1873, when he resigned, and defendant Mathewson was duly appointed by the governor to fill the vacancy. On January 1, 1873, the revised code of California went into effect, from which in some manner the provision for an election of harbor commissioner was omitted. Yet the two political parties each nominated a candidate for the office, and at the general election in September, 1873, one Newman received the greater number of votes cast for said office, to whom a commission was regularly issued by the governor,

and having duly qualified he demanded possession of the office from Mathewson, the appointee of the governor. Mathewson refusing to surrender possession of the office, the attorney-general commenced proceedings to oust him. In deciding the case, WALLACE, C. J., speaking for the court, says: "It is necessary to the validity of an election to office that it be authorized by some statute in force at the time. Here there was none. By the three hundred and sixty-second section of the political code, it is provided as follows: 'Harbor commissioners are elected and appointed and hold their office as provided in title VI of part III of this code.' But on referring to that portion of the code, no provision for such election is found. The defendant Mathewson, having been regularly appointed by the executive to fill the vacancy caused by the resignation of Rosenfeld, his term continues by law until the next election by the people (Pol. Code, § 999); but as we have said already, such election by the people cannot legally occur until authorized by a statute in force at the time." Again, by an act of the legislature of California, approved April 1, 1878, the judges of the fourth, twelfth and fifteenth judicial districts of the state were empowered and required to choose the members of the board of police commissioners of the city of San Francisco. No term of office for the commissioners was fixed by the act. The act prescribed the powers and duties of the board, and further provided that after the expiration of the official term of the then chief of police, his office should "cease to be elective, and shall be filled by the commissioners." On the assumption that this act was unconstitutional, because the power thus conferred upon the judges was not judicial in its nature, an application was made to the courts for a writ of mandamus requiring the election commissioners to make suitable and legal preparation for the election of chief of police and police commissioner, but it was denied on the ground that such officers were not elective. (*Staude* v. *Election Commissioners*, 61 Cal. 313.) By the constitution of 1879 the judges of the district courts were superseded by the

judges of the superior courts, but an application for a writ of mandate commanding the judges of the latter court to appoint police commissioners was, assuming that the terms of office had expired, denied because the power of appointment in question was not a judicial power, and did not devolve upon the superior judges by force of the constitution of 1879. (*Heinlen* v. *Sullivan*, 64 Cal. 378.) The governor of the state then assuming that the office was vacant under the constitution on and after four years from the date of the original appointment, undertook to fill such vacancy by appointment, but the court held that there was no vacancy in the office which the governor was authorized by law to fill by appointment, and that the incumbent must discharge the duties of the office until succeeded by some person entitled by virtue of some existing law to supersede him. (*People ex rel.* v. *Hammond*, 66 Cal. 654.)

We could safely rest the case before us here, but there is another question urged by counsel which we think proper to notice. It is contended that the act of 1889 invests respondent with an office the tenure of which is longer than four years, and therefore in conflict with section 2, article XV of the constitution, which inhibits the legislature from creating any office the tenure of which shall be longer than four years. The fallacy of this argument lies in the fact that the act of 1889 does not create the office of police commissioner, nor did it invest respondent with the office, nor does it undertake to definitely fix the tenure. The office was created by the act of 1885 with a fixed term, and defendant was regularly appointed, and, while he was rightfully in possession of the office and discharging its duties, the legislature abolished the term and mode of electing his successor, leaving the office, with its duties clearly defined, in the legal possession of respondent, with no mode provided for the election or selection of his successor, except in case of death or resignation. He does not hold the office by virtue of the provisions of the act of 1889, but under his original appointment and the failure of the law to provide

a mode for the election of his successor.   The act of 1889 left him in possession of the office, and its duties are of a public character, and the public exigencies demand that they be discharged.   He is simply *locum tenens*—holding the place—until he shall be superseded by some person authorized by law to be inducted into the office.   It is claimed that the provision in the act of 1889 "that the commissioners now in office shall hold their respective offices until their successors are elected and qualified," without any mode being provided for the election of such successors, is in effect a continuance of the commissioners in office by legislative enactment, and that respondent's title depends on this enactment.   As we have said already, respondent's right to the office does not depend on the act of 1889, but upon the fact that he was in possession of it rightfully when the act was passed; and the public necessities requiring that the office be in possession of a person with authority to perform its duties, he continues to hold it until he shall be relieved or superseded by proper legislation.   Strictly speaking, respondent is not holding over, for to hold over, when applied to a public officer, implies that the office has a fixed term which has expired, and the incumbent is holding into the succeeding term.   Here there is no fixed term, and therefore there can be no holding over.   But conceding that his term has expired and he is holding over, he has a right to do so by force of the constitution; and the language above referred to is but a legislative declaration of the constitutional provision.   Section 7 of article VI of the constitution authorizes the election or appointment, as may be prescribed by law, of such city officers as may be necessary; while by section 1 of article XV it is provided that "all officers except members of the legislature shall hold their offices until their successors are elected and qualified."   Whether or not, as a general principle of the common law, officers are entitled to hold over beyond their prescribed terms without some express provision, is not entirely settled upon authority.

But whatever the rule at common law may have been, it is clear that when by the constitution or law, officers are elected or appointed for a term, and until their successors are elected and qualified, they are thereby authorized to hold and exercise their offices until their successors are duly elected or appointed under some existing provision of law. The right to hold over is derived from the same constitution that imposes the limitation upon the legislature in the creation of the office. The constitution permits a legislative tenure for a fixed term not exceeding four years, and if at the expiration of that period, from any cause such as failure of the legislature to provide for the election of his successor (*People ex rel.* v. *Hammond,* 66 Cal. 654); or of the regular appointing power to make an appointment (*State* v. *Howe,* 25 Ohio St. 588, 18 Am. Rep. 321); or of the electoral body to elect (*State* v. *Harrison,* 113 Ind. 434, 3 Am. St. Rep. 663; *People* v. *Oulton,* 28 Cal. 44; *People* v. *Stratton,* 28 Cal. 382; *State* v. *Lusk,* 18 Mo. 333); or the death of the person elected to fill the office before he has qualified (*Commonwealth* v. *Hanley,* 9 Pa. St. 513), no successor has been elected or appointed under an existing law, the incumbent holds over by virtue of the provisions of the constitution until he is superseded by a duly qualified successor who shall have been elected or appointed in the manner provided by law. (*People* v. *Woodruff,* 32 N. Y. 355; *People* v. *Batchelor,* 22 N. Y. 128; Mecham on Office § 397; *State* v. *Davis,* 45 N. J. L. 390; *People* v. *Tilton,* 37 Cal. 614.)

The reason of this rule is that public policy requires that the duties of the office be performed, and it is better that the incumbent should continue in the office and in the performance of its duties than that an interregnum should occur. It conserves the public interests by preserving the methods and instrumentalities by which alone public business can be transacted; while the opposite rule, when pushed to its consequences, might result in the suspension of business in many of the departments of the public service.

It was urged that the statute under consideration is harsh and oppressive in its character, and contrary to the genius

of our institutions in denying to the people of Portland the right to elect their own police commissioners. These are political considerations, fit to be weighed by and to influence legislators; but if disregarded by them, their responsibility is to their constituents and not to the courts. The impolicy, unwisdom or unreasonableness of a statute by themselves merely, are and ought to be urged to a court in vain. The functions of the judicial department are not adequate to the application of those principles and not conferred for that purpose. If a change is desired in the law in this respect, application must be made to the legislature and not to the courts.

The judgment of the court below is, therefore, affirmed.