Argued 11 January, decided 20 February, 1906.

**PACIFIC UNIVERSITY *v.* JOHNSON.**

84 Pac. 704.

STATUTORY CONSTRUCTION — INTOXICATING LIQUORS.

Under the rule of construction declared by Section 707 of B. & C. Comp., that the legislative intention shall be followed, if possible, it must be held that the council of the City of Forest Grove has not authority, under the charter of 1891, to license the sale of intoxicating liquors. The authority to "regulate," in view of the history of the charter and the social conditions that have long existed at that point, does not imply the right to license, but rather the right to control the disposal of liquors by some other means.

From Washington : THOMAS A. McBRIDE, Judge.

Statement by MR. JUSTICE HAILEY.

This a suit brought by Pacific University, an educational institution existing under a special act of the council of the Territory of Oregon, passed January 10, 1854, to restrain C. N. Johnson and others, who are the mayor and city officers of the City of Forest Grove, and one Albert G. Watson, from issuing to said Watson a license to conduct a saloon and sell intoxicating and spirituous liquors therein in the City of Forest Grove, pursuant to an ordinance passed by the common council of said city, which ordinance the plaintiff claims is void for the reason that the city council had no authority under its charter to license the sale of intoxicating liquors within its limits. A demurrer was filed to the complaint in the court below, and after it had been overruled the defendants declined to plead further, and a decree was entered as prayed for in the complaint, prohibiting the issuance of a license and the establishment of a saloon, in effect holding the ordinance void, and declaring that the city had no authority to grant a license for the sale of intoxicating liquors, from which decree this appeal has been perfected.

AFFIRMED.

For appellants there was a brief over the names of *Edmund Burke Tongue* and *Cake & Cake,* with oral arguments by *Mr. Tongue* and *Mr. William Marion Cake.*

For respondent there was a brief, with oral arguments by *Mr. Samuel Bruce Huston* and *Mr. Henry Hale Northup.*

MR. JUSTICE HAILEY delivered the opinion of the court.

The only question involved on this appeal is whether or not under the charter of the City of Forest Grove the common council has authority to grant a license for the sale of intoxicating liquors within its limits. The portion of the charter in question is Clause 7 of Section 7 of Article 6, conferring upon the common council power and authority "to suppress, regulate and prohibit the sale or giving away of spirituous, malt or vinous liquors, or other intoxicating compounds, or cigarettes," found on page 435 of the Session Laws of 1895. It is contended on the part of defendants that the word "regulate," as used in the foregoing clause, includes the power to license the sale of intoxicating compounds; while the plaintiff argues that the omission of the word "license" from that clause, and its use in the clauses immediately preceding and succeeding the one quoted, coupled with the fact that the amended charter of the City of Forest Grove, enacted in 1885, omitted the word "license," which had been in the original charter granted in 1872, does not authorize the common council to license the sale of intoxicating compounds. The word "regulate" is construed by the defendants to be a much broader term than the original word "license," dropped from the charter when amended in 1885, and it is claimed by them to be an enlargement, rather than a restriction, of the powers conferred upon the council in the matter of the sale of intoxicating compounds; while the construction placed upon the word "regulate" by plaintiff restricts, rather than enlarges, the powers of the council.

There are certain established and well-recognized rules which must be considered in the construction of every law. Among others, our Code provides:

47 OR.——29

First.  "In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all."  B. & C. Comp. § 706.

Second.  "In the construction of a statute the intention of the legislature  *  *  is to be pursued if possible; and when a general and particular provision are inconsistent, the latter is paramount to the former.  So a particular intent shall control a general one that is inconsistent with it."  B. & C. Comp. § 707.

This legislative intention, however, must be ascertained from the words used in connection with the surrounding circumstances:  *State ex rel.* v. *Simon*, 20 Or. 365 (26 Pac. 170).  Again, where a statute has been amended, resort may be had to the original act to explain any ambiguity which may exist in the language of the amended act, but not to supply omissions; and statutes and parts of statutes omitted from amendments to such statutes are to be construed as annulled, and cannot be revived by construction, nor can a court, in order to give effect to what is supposed to be the intention of the legislature, put upon the provisions of a statute a construction not supported by the words.  The court cannot supply omissions of the legislature:  *State ex rel.* v. *Simon*, 20 Or. 365 (26 Pac. 170).  "The settled rule of construction of grants by the legislature to corporations, whether public or private, is that only such powers and rights can be exercised under them as are clearly comprehended within the words of the act or derived therefrom by necessary implication; regard being had to the objects of the grant.  Any ambiguity or doubt arising out of the terms used by the legislature must be resolved in favor of the public":  Sutherland, Stat. Const. § 380.

Applying the foregoing rules of construction to the case in hand, we find that, under the original charter granted the Town of Forest Grove in 1872, the board of trustees was given power, among other things:

"To license, tax, regulate, restrain and prohibit theatrical and other exhibitions, shows and amusements, the sale of intoxicating liquors, ale and beer."

It further appears that in 1885, by a new charter, repealing the old, the board of trustees had power and authority, first:

"To license, tax and regulate auctioneers, taverns, hawkers, peddlers, pawnbrokers, and all offensive or noxious trades or occupations";

Second, "to license, tax and regulate theatrical and other exhibitions, shows, public amusements, billiard tables, bowling alleys, and no tax or license given under this act shall be less than that required under the general laws of the State";

Third, "to suppress, regulate and prohibit the sale or giving away of any intoxicating liquors, ale or beer."

In 1891 a new charter was granted to the City of Forest Grove and the old charter of 1885 repealed, and in this new charter the common council was given power and authority, under Article 6, § 7, cl. 6:

"To license, tax and regulate theatrical and other exhibitions, shows, public amusements, billiard tables and bowling alleys, and no tax or license given under this act shall be less than that required under the general laws of the State in force at the time such license is issued."

7. "To suppress, regulate and prohibit the sale or giving away of spirituous, malt or vinous liquors or other intoxicating compounds."

8. "To license, tax and regulate auctioneers, taverns, drays, hacks, wagons, hawkers, peddlers, brokers, pawnbrokers, money changers, traveling salesmen and solicitors, and all business houses, branches of business or professions not elsewhere in this act otherwise provided for."

In 1893 this last charter was amended by adding the words "or cigarettes" to clause 7.

It will be noted that in the original grant of power over the liquor traffic in Forest Grove the board of trustees had power to "license, tax, regulate, restrain and prohibit" the sale of intoxicating liquors, but in the charter adopted in 1885 the words "license, tax and restrain" were omitted, and the words "regulate and prohibit" retained, and the word "suppress" added. While, as affecting the power over theatrical and other exhibitions, the words "license, tax and regulate" were retained, and are still retained and made applicable to all matters mentioned in clauses 6 and 8 of section 7 of article 6 of the charter now in force, yet the words "license and tax" are not used in clause 7 of said section. The necessary inference, then, from this retention of the words "license and tax," as used in clauses 6 and 8 of section 7, and the omission of such words in clause 7 of said section, is that the legislature did not intend to confer authority upon the common council to license or tax the sale of intoxicating liquors mentioned in clause 7, but expressly limited the power conferred by said clause to suppressing, regulating and prohibiting such traffic. In clauses 6 and 8, as stated above, the words "license and tax" are used in connection with the word "regulate," and, having been so used in those clauses, there can be no other interpretation of the legislature's intent in omiting the use of the words "license and tax" in clause 7 than that such omission was for the purpose of limiting the power of the common council to regulating. The legislature evidently did not give to the word "regulate" in clauses 6 and 8 the broad meaning which defendants claim it bears in clause 7, to wit, that of including the power to license and tax; for, if it had so done, then the use of the words "license and tax" in these two clauses, in connection with the word "regulate," would

have been surplusage, and such a construction would violate the well-known rule of interpretation that every word used must be given a meaning if possible. We therefore conclude that in the use of the words "license and tax" in clauses 6 and 8 the legislature conferred express power upon the common council to do what those words import, and in the omission of the use of those words in clause 7 it is clearly intended not to grant power to do what the omitted words import.

It is argued, however, that the whole policy and intent of the law of this State, as evinced by the acts of the legislature, is not along the line of prohibition, but rather along the line of license, leaving the entire matter to the incorporated town or city for determination, which may be true in a certain sense ; but, under the rule that a particular intent shall control a general one that is inconsistent with it, we hold that whatever the general intent of the legislature may have been as to its policy regarding the liquor traffic in the State, in this case the particular intent was not to confer the power of licensing such busines upon the common council of the City of Forest Grove. To read the omitted word, "license," into clause 7 would be to supply the words omitted from the amended law and thus revive by construction what had been eliminated by positive enactment, and this the court cannot do. Again, when there is any ambiguity or doubt arising out of the terms used by the legislature, such doubt must be resolved in favor of the public, or, in other words, where the words used do not in themselves or by clear implication confer the power claimed by a corporation, public or private, such power is not granted to the corporation, but reserved to the public. In this case, the word "regulate" having been used in at least two of the clauses of the charter in question in its limited sense, as not including the power to license or tax, we cannot presume or infer that it has a broader meaning

when used in the clause now in question.   It is true there
are many cases in the Reports which have given to the
word "regulate" a meaning broad enough to include the
power to license; but, in construing this word in the stat-
ute before us, we must do so in the light of surrounding
circumstances, and the history of the legislation of this
State upon the immediate subject before us in the locality
to which it applies.

The history of that locality as set forth in the pleading
shows that the plaintiff is an institution of learning, pat-
ronized by many young people, and possessed of valuable
properties, the title to which was given conditional that
no intoxicating liquors should be allowed sold or used
upon the premises, and that in the history of the City of
Forest Grove, the site of plaintiff's location, no license has
ever been issued for the sale of intoxicating liquors, and
these facts, together with the legislative history of the
charter, which shows that, although at one time the power
to license the sale of intoxicating liquors was conferred
upon the board of trustees, such power was afterward re-
stricted by striking the word "license" from the charter,
all of which evidences are to be considered in determining
the intention of the legislature, clearly impel us to the belief
that the legislature did not intend to grant to the city coun-
cil power to do more than regulate the liquor traffic.   Forest
Grove being a college town, where young people gather for
instruction and learning, and many homes having doubt-
less been established for the education of sons and daugh-
ters, we can readily see why the legislature in its wisdom
would hesitate to license the sale of intoxicating liquors,
which necessarily brings into existence the saloon, a place
where those who indulge in such things habitually congre-
gate and spent their time, but might confer the power to
regulate such traffic in the way of permitting the sale of
liquors for medicinal and other purposes, where the sale

would not permit the people to gather in numbers and loaf and loiter as they often do about a saloon. To license is one thing and to regulate another. To license means to permit, to give authority to conduct and carry on; while to regulate means to prescribe the manner in which a thing licensed may be conducted.

It is argued on the part of defendants that the power to regulate necessarily implies the existence of that which is to be regulated, which is true; but the further contention made by defendants that the power to regulate necessarily implies the sale of intoxicating liquors, and therefore the existence of a saloon where such sale can be made, does not follow. The common council might have power to regulate the sale of liquor for medicinal and other purposes, and the sale thereof could readily be made in accordance with such regulations, without being done in a saloon or place of resort where people might congregate and drink to excess.

Taking, then, the charter by its four corners, and considering it by the rules of construction laid down in the beginning of this opinion, we are constrained to hold that no power was conferred by the legislature upon the common council of the City of Forest Grove to license the sale of liquors within its limits, and that the ordinance attempting to do so is void, and the decree of the lower court herein should be and is affirmed.  AFFIRMED.

---

Decided 2 January, rehearing denied 30 January, 1906.