Argued May 26, affirmed June 22, rehearing denied July 27, 1915.

## ROBERTSON *v.* PORTLAND.

(149 Pac. 545.)

**Municipal Corporations—Ordinances—Conformity to Charter—Initiative and Referendum.**

1. Under Article IV, Section 1a of the Constitution, reserving to the voters of every municipality the initiative and referendum as to all local and special municipal legislation, and Article XI, Section 2, giving the legal voters of every municipality power to enact and amend their municipal charters, though the charter is now adopted by the same body and through the same procedure as the ordinances, it is still the measure of the city's existence and authority, and no ordinance can be adopted which is not within the express or implied powers granted to the city by its charter.

   [As to injunction against void ordinances, see note in 118 Am. St. Rep. 372.]

**Constitutional Law—Construction—Provisions Relating to Same Subject.**

2. Those sections relate to the same subject matter, and must be construed together.

**Municipal Corporations—Local Improvements—Ordinances—Charter Provisions.**

3. Under Portland City Charter of 1913, Section 284, which declares that the provisions of the former charter relating to public improvements by local assessments shall remain in force as ordinances only, the effect of which was to repeal them as charter provisions, those provisions are directly dependent on the charter for their validity and are not invalid as not being based on a charter provision authorizing proceedings for such improvements.

From Multnomah: ROBERT G. MORROW, Judge.

In Banc.    Statement by MR. JUSTICE HARRIS.

This is a suit by W. E. Robertson and Hannah B. Robertson against the City of Portland, to restrain the paving of Cornell Street, and to prevent the levying of special assessments to pay for the improvement. In 1903 the legislature enacted a charter for the City of Portland: Sp. Laws 1903, p. 3.    Acting under the authority of Section 1a of Article IV and Section 2 of Article XI of the state Constitution, reserving to the legal voters of municipalities the right of the initiative and referendum and the power to enact their own charters, the electors of the defendant city at an election held on May 3, 1913, adopted a charter which provides for a commission form of corporate government and became effective July 1, 1913.    The 1913 charter is entitled:

"An act to amend an act of the legislative Assembly of the State of Oregon entitled 'An act to incorporate the City of Portland, Multnomah County, State of Oregon, and to provide a charter therefor, and to repeal all acts or parts of acts in conflict therewith,' filed in the office of the Secretary of State, January 23, 1903, amended by the legislative assembly of the State of Oregon in 1905, and subsequently amended by the people of the City of Portland, providing for a commission form of government."

One section of the 1913 charter, known as Section 106 of amendments as adopted May 3, 1913, referred to as Section 345a in a compilation prepared by the auditor prior to May 3, 1913, and now designated as Section 284 of the charter of the City of Portland as revised by the council August 19, 1914, reads:

"That so much of Sections 346 and 347, 348, 349 and 350 as heretofore amended, and of Sections 362 to 421, both inclusive, of the charter of 1903, as is not inconsistent with the provisions of this charter shall remain

in full force and effect as ordinances only subject to repeal and amendment and to the enactment of new legislation by the council in the manner and subject to the restrictions in this section provided upon the subject of improvements of whatever nature to be paid for by local assessment. Such sections shall be known as the Local Improvement Code. No repeal of any portion thereof, amendment thereto nor new legislation upon the subject shall be made by the council except by ordinance which shall be published in full and in its final form in the city official newspaper at least thirty days before its final passage. Notice shall be given in the city official newspaper and by publishing conspicuous advertisements in one or more daily papers published in the City of Portland having a circulation of not less than 1,500 not less than five times, the last of such notices to be published not less than ten days before the final adoption of any such amendment, repeal or new legislation. Upon the adoption of any amendment to or the repeal of any part of such Local Improvement Code or the adoption of any new legislation upon the subject, the whole Local Improvement Code shall be printed in pamphlet form and the auditor shall be furnished with a sufficient number of copies thereof for distribution to all persons inquiring for the same. The council, in the exercise of its general legislative powers, may provide in its discretion for the performance of any public work by or on behalf of the city and for the method of payment thereof, but said Local Improvement Code must provide for the giving of not less than ten days' notice by publication, or by mailing to persons interested, (a) of the intention to make any improvement, and (b) of any proposed assessment against property owners for the same, and the right shall be preserved to the owners of sixty per centum in extent of the property affected by any assessment for a local improvement except for street opening or sewers to defeat the same by remonstrance."

The charter of 1903, by the terms of Section 374, empowers the council to order a street improvement to determine the kind of improvement, and to levy assessments on the land specially benefited. Section 375 requires the city engineer to prepare plans and specifications for the contemplated improvement, and to make estimates of the probable cost of the work to be done; if the council approves the report of the engineer, it then determines the boundaries of the district benefited and to be assessed; the. council by resolution declares its purpose to make the improvement and notice of such intention is published. Section 376 provides for the publication of notices; Section 377 affords an opportunity for remonstrances; and Section 378 declares that if no objection or remonstrance, signed by the owners of two thirds of the property affected, is filed within a designated time, the council acquires jurisdiction, and may thereafter by ordinance provide for making the improvement. Section 379 directs the executive board to invite bids for the work, and empowers the board to award the contract. When the work is completed, Section 394 authorizes the auditor to apportion the cost upon the land benefited, and such apportionment is known as a proposed assessment, appropriate notice of which is given; upon the expiration of a fixed time the council is required to consider the proposed assessment together with all objections, and to determine the amount of benefits accruing to the lands assessed, and if the apportionment made by the auditor is not just it shall be corrected by the council; and "the council shall then declare said assessment by ordinance."

In July, 1914, the city commenced proceedings which culminated in awarding a contract for paving a certain portion of Cornell Street, the council having taken all

the steps required by the sections of the 1903 charter already alluded to. The plaintiffs are the owners of land affected by the street improvement, and they have appealed because the decree of the Circuit Court was favorable to the defendant.

AFFIRMED.    REHEARING DENIED.

For appellants there was a brief, and an oral argument by *Mr. Ralph R. Duniway.*

For respondent there was a brief over the names of *Mr. Lyman E. Latourette, Mr. Richard W. Montague* and *Mr. Walter P. La Roche,* City Attorney, with oral arguments by *Mr. Latourette* and *Mr. Montague.*

MR. JUSTICE HARRIS delivered the opinion of the court.

The plaintiffs contend that the proceedings of the council relating to the Cornell Street improvement were without charter authority. The Robertsons argue that the action of the city council, to be valid, must find its warrant in the municipal charter; that the commission charter contains no provisions for the improvement of streets or for the levying of special assessments; and that therefore the contract for the litigated improvement is void. The defendant asserts that the commission charter contains ample language to support the acts of the council; and the city takes the advanced position that:

"The power of the people to enact legislation relative to local, special, and municipal matters is a constitutional right as to which no restriction has been placed. The people have this right and may exercise the same whether the charter contain any provision authorizing legislation of that character or not."

1. We agree with plaintiffs that the charter measures the power of the council and disagree with the contention of defendant that the people of a municipality may enact ordinances regardless of whether the charter contains any provision authorizing such legislation. By the terms of Section 1a of Article IV of the state Constitution, the initiative and referendum powers are reserved to the legal voters of every municipality as to all local, special and municipal legislation of any character in or for their respective municipalities. It is also provided by Section 2 of Article XI of the organic law of the state that:

"Corporations may be formed under general laws, but shall not be created by the legislative assembly by special laws. The legislative assembly shall not enact, amend, or repeal any charter or act of incorporation for any municipality, city, or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon."

2. These two sections amending the Constitution were adopted by a vote of the people at the same election in 1906, and so far as they relate to the same subject matter must be construed together: *McKenna* v. *Portland,* 52 Or. 194 (96 Pac. 552); *Branch* v. *Albee,* 71 Or. 188, 197 (142 Pac. 598).

The constitutional amendments granting to the voters of municipalities the power to enact and amend their charters and extending the initiative and referendum to municipal legislation, did not do away with the necessity of organic law for a city government. A charter is now essential to municipal existence to the same extent as before the adoption of the amendments. The very language employed in Section 2 of Article

XI contemplates the necessity of a charter because the legal voters are given the power to enact and amend their charters. Waiving the question as to whether it can affect charters by general laws, the legislative assembly cannot now enact, amend or repeal any single act of incorporation. The power to amend a charter is lodged with the electors of the state as a whole, and is also conferred upon the legal voters of the municipality, but is found in no other place. When they amended the Constitution the sovereign people of the commonwealth in effect declared that all the powers properly belonging to municipal government are at all times made available by a continuous offer to each city; that the legal voters of each municipal corporation may exercise all those available powers or take hold of only a part of them; and that the extent of the powers accepted, assumed, and exercised by the electors is made known, measured and determined by the charter. If the electors of a municipality choose to do all things that may lawfully be done they must manifest that choice by their charter, and if they are contented with the right to exercise less than the whole power their decision is likewise written in the charter.

When the legislature passed a special law amending a charter it was deemed to be a special grant of power, and if the voters of the entire state enact special legislation affecting a city charter it would receive a like construction. The people of any municipality can now do that which the legislative assembly can no longer do, but at one time could do. The legal voters of a municipality, when acting under the initiative, may pass an ordinance, and they possess like authority to enact a charter; it is true that in both instances the procedure may be the same and the creators of the ordinance are identical with the makers of the charter.

It is clear, however, that a charter must actually exist
now the same as before the constitutional amendment,
else the language of the Constitution would have been
quite different. A charter being essential to munici-
pal life it necessarily follows that the instrument must
exist for the same purposes and to the same extent as
formerly; and an ordinance, whether enacted by the
legal voters of the city or passed by the council, must
be referable to a power embraced by the charter. The
charter of a city is to its citizens and officers the
measure of their authority over persons and property:
*Southwestern Telegraph & Telephone Co.* v. *City of
Dallas,* 104 Tex. 114 (134 S. W. 321). As said by Mr.
Justice BURNETT in *Kalich* v. *Knapp,* 73 Or. 558 (145
Pac. 22, 28):

"It is beyond dispute that the council cannot law-
fully exceed its legislative authority defined and lim-
ited by the charter under which it acts."

It is hornbook law that municipal corporations have
no powers except such as are granted in express words
by their charters, or such as are necessarily implied
from those granted, or those essential to the declared
objects and purposes of the corporations: *Corvallis* v.
*Carlile,* 10 Or. 139 (45 Am. Rep. 134); *Beers* v. *Dalles
City,* 16 Or. 334 (18 Pac. 835); *Pacific University* v.
*Johnson,* 47 Or. 448 (84 Pac. 704); *McDonald* v. *Lane,*
49 Or. 530 (90 Pac. 181); *Naylor* v. *McColloch,* 54 Or.
305 (103 Pac. 68); *Mutual Irr. Co.* v. *Baker,* 58 Or. 306
(110 Pac. 392, 113 Pac. 9); *Rosa* v. *Bandon,* 71 Or. 510
(142 Pac. 339).

3. Having determined that the charter must be broad
enough to include the action of the council, the next
step in the inquiry is to ascertain whether the charter
adopted May 3, 1913, and effective July 1st of that year,
authorizes the street improvement which was ordered

by the council in 1914. It must be conceded that the proceedings now complained of would have been valid if they had occurred prior to July 1, 1913, because the charter of 1903 furnished the requisite authority. It will be remembered that the provisions contained in the 1903 charter relating to street improvements and special assessments are by the terms of Section 284 of the 1913 or commission charter declared to remain in full force and effect as ordinances only. In *State ex rel. v. Portland,* 65 Or. 273, 285 (133 Pac. 62), this court said that the effect of the clause in the revision "is to repeal the provisions as parts of the charter and to re-enact them as ordinances. The people have already repealed them so far as they stood as charter provisions, but have re-enacted them as ordinances." The sections of the 1903 charter, material to this discussion and continued as ordinances by the present charter, have not been amended or repealed since May 3, 1913, and are not inconsistent with any expressions found in the commission charter. The authority which formerly was incorporated in a charter is now found in ordinances; and the plaintiffs argue that the resolutions and ordinances of the council providing for the Cornell Street improvement and the contemplated special assessments are based upon nothing but ordinances, which in turn lack the support of a charter. We cannot concur in the conclusion reached by the plaintiffs. The one time charter provisions but now ordinances prescribe in detail the procedure to be followed by the council, and the procedure outlined by the ordinances is directly referable to the charter of 1913; the ordinances applicable to all improvements and under which the council acted exist and are effective because and only because the charter of 1913

77 Or.—9

specifically declares that they do exist; the connection between the ordinances and the charter is direct; the charter is fully as broad as the ordinances, and they are comprehended in their entirety by the charter because that instrument continues them as written in the charter of 1903. Instead of containing appropriate language permitting the legal voters or the council to pass the ordinances involved in this discussion the charter has by the force of its own terms enacted the ordinances. The charter is the authority for the ordinances as well as for all the proceedings contemplated or required by them; the ordinances owe their existence to the charter and they are vitalized by it and nothing else. The council possessed the requisite authority for making the street improvement and for exacting the assessments complained of. The decision of this case does not require any expression of opinion as to whether the council is properly and sufficiently empowered to enact new legislation prescribing a different procedure for street improvements and special assessments.

The decree of the Circuit Court is affirmed.

AFFIRMED.    REHEARING DENIED.

MR. JUSTICE BURNETT did not sit.