Argued January 22, affirmed January 29, 1918.

# GRIMES *v.* CITY OF SEASIDE.*

(170 Pac. 310.)

**Municipal Corporations—Street Improvements—Jurisdiction.**

1. Where plaintiffs deeded land to the public as a highway and the dedication was accepted by the County Court, and they later deeded an extension on condition that the county road should be vacated, and stood by without objection while the city improved the street, the city had jurisdiction to assess on the abutting land the cost of improving the street as a city and not a county road.

> [As to the purposes for which a municipal corporation may levy assessments and taxes, see note in 16 Am. St. Rep. 365.]

**Municipal Corporations — Street Improvements — Specifications — Patented Article.**

2. The city does not, by specifying patented paving, make an illegal contract, where the owner of the patent offers to permit its use on reasonable terms by any other person.

**Municipal Corporations — Street Improvements — Lien Dockets — Sufficiency.**

3. Where the lien docket showed the names of persons, the description of the land and the amount of the assessment and the manner and time for its payment, it was sufficient, although it did not expressly state that the persons named were severally the owners of the real property, nor that the sums named after the description of land were the amounts respectively imposed upon the lands described.

**Municipal Corporations—Street Improvements—Lien—Foreclosure.**

4. Under Seaside Charter, empowering the city to sue for the cost of improvement and to have a lien therefor decreed on the premises, the city was authorized to have a foreclosure of a lien of a special assessment for paving street.

From Clatsop: JAMES A. EAKIN, Judge.

Department 2.    Statement by MR. JUSTICE MOORE.

This is a suit by G. M. Grimes against the City of Seaside, a municipal corporation and G. E. Shaver its then marshal, to annul a contract for the paving of a part of Broadway Street, formerly known as Bridge

---

*As to validity of contract of municipal corporation for material patented or held in monopoly where a letting to the lowest bidder is required, see notes in 18 L. R. A. 45; 5 L. R. A. (N. S.) 680; 46 L. R. A. (N. S.) 990.        REPORTER.

Street, to enjoin proceedings for the collection of a delinquent assessment, and to cancel the docket of city liens. From a decree declaring the assessment valid, the lien thereof subsisting, foreclosing such encumbrance and directing a sale of the land benefited by the improvement, the plaintiff appeals.      AFFIRMED.

For appellant there was a brief over the names of *Mr. Hayward H. Riddell* and *Mr. H. Daniel,* with an oral argument by *Mr. Riddell.*

For respondents there was a brief over the names of *Mr. George C. Fulton, Mr. A. C. Fulton* and *Mr. Victor J. Miller,* with an oral argument by *Mr. A. C. Fulton.*

MR. JUSTICE MOORE delivered the opinion of the court.

It is contended that the municipality was without jurisdiction to make the improvement, or to levy a special assessment for any part of the cost thereof upon adjacent land only, because the highway undertaken to be benefited is a county road and subject to the control of the County Court of Clatsop County, Oregon. No reference to any of the provisions of the charter of the City of Seaside, adopted at a special election held February 28, 1912, will be made, nor will the proceedings undertaken by the council of that municipality, to initiate and make the improvement be alluded to, since it is conceded that the clauses of the organic law of that city and of the ordinances and resolutions enacted and adopted pursuant thereto were strictly obeyed, except in one instance hereinafter mentioned.

Broadway Street is represented on the map of the City of Seaside, which was received in evidence, as commencing on the east at O'Hanna Creek, thence west crossing the Necanicum River to the Pacific Ocean.

87 Or.—17

The highway immediately east of the Necanicum River and extending northerly and southerly and nearly parallel therewith is designated as Seventh Street, which has been held to be a county road: *Cole* v. *Seaside,* 80 Or. 73 (156 Pac. 569).

The evidence shows that E. M. Grimes, C. C. Grimes and S. K. Stanley and the wife of each respectively, on June 29, 1892, executed to the public a deed conveying as a highway a strip of land 30 feet wide, being 15 feet on each side of a center line, beginning at a point in the middle of the county road (Seventh Street) opposite the middle of the east end of the bridge across Necanicum River; thence west to the middle of the east end of such bridge; thence crossing the river to a post on the west bank thereof about 80 feet north of the west end of the bridge; thence west 200 feet; thence north 100 feet, more or less, to the intersection of the middle of Pine Street extended eastward; and thence westward along the latter street to low-tide line of the Pacific Ocean. Such conveyance was made upon condition that Clatsop County would, within a specified time, build a substantial bridge across the Necanicum River on the designated line.

C. A. McGuire and his wife on July 5, 1892, also executed to the public a deed to a strip of land 15 feet in width bordering upon Broadway Street, but as this tract is situate east of the Necanicum River, no attention need be paid to such conveyance. The 30-foot strip of land described in the deed executed by E. M. Grimes and others to the public was surveyed June 8, 1893, as appears from copy of the field-notes and a blueprint of the map thereof, which show that the middle line of the bridge across the Necanicum River and for a distance of about 150 feet from the west bank of that stream was run south 83° 50′ west; thence west 200

feet; thence north 139 feet to Pine Street, and thence west along that street to the Pacific Ocean.

The records of the County Court of Clatsop County show that on July 6, 1892, a firm of contractors offered to build a bridge across that river for the sum of $1,630, which bid was accepted and it is conceded that the structure was thereafter completed.

By reason of the uncertainty of the point of beginning of the highway at Seventh Street, a resurvey of the line west thereof was completed April 20, 1905. Field-notes and a map of the survey were filed in the office of the county clerk six days thereafter. A blue-print of that map was received in evidence, and from an examination of such duplicate the course from the beginning point is indicated as N. 89° 58′ west to the east end of the bridge on the Necanicum River; thence N. 77° 30′ W. 456.12 ft. thence N. 89° 29′ W. 146.4 ft. to the former line which extending north intersected Pine Street. The County Court on May 6, 1909, ordered that the dedication and plat of such survey be recorded and that the bridge be changed as soon as possible.

The plaintiff, G. M. Grimes, his wife and others on June 1, 1908, executed conveyances, dedicating an extension of Bridge Street west of the Necanicum River upon condition however, that the county road should be vacated. It was the purpose of these grants to give to the public a right to the use of Broadway Street, as indicated on the plat of Seaside, extending west of the stream to the Pacific Ocean. An examination of the courses noted on the blue-print, evidencing the resurvey, discloses that commencing at the west end of the bridge the line extends northwesterly, while the street as dedicated runs west, and that one tract of the plaintiff's land which was assessed for the improvement lies south and two other parcels are situate north of Broad-

way, which street in front of his premises that border
thereon is located wholly south of the line of the high-
way as resurveyed April 20, 1905, so that no part of the
improvement abutting upon his premises was made
upon the county road.

1. Whether such highway was ever legally adopted or
vacated is not necessary to a decision herein, for the
plaintiff knew that Broadway Street which was widened
by his consent, was being improved, and until the work
was fully completed he never applied to the court to
prevent the betterment of his land. We conclude,
therefore, that the City of Seaside had jurisdiction to
assess upon the abutting land the cost of improving
Broadway Street west of the Necanicum River, and
that this street is not a county road.

By resolution of the Common Council of the City of
Seaside, it was determined to grade and improve
Broadway Street with "Gravel Bitulithic" pavement,
making the necessary artificial stone curbs on each side,
installing catch basins and providing for surface drain-
age. Warren Brothers Company, a corporation, the
owners of the patent right for mixing and using bitu-
men and crushed rock or gravel, according to a pre-
scribed formula for road building and surfacing, and
also the owner of the copyright name "Gravel Bitu-
lithic" mailed to the proper officer of Seaside a "license
agreement" permitting any contractors having ade-
quate machinery, to use its patent right and trademark
upon equal conditions, which authority is of similar im-
port as set forth in the case of *Johns* v. *City of Pendle-
ton,* 66 Or. 182 (133 Pac. 817, 134 Pac. 312, Ann Cas.
1915B, 454, 46 L. R. A. (N. S.) 990). Thereafter plans
and specifications of the proposed improvement were
duly made and filed and notice published that the con-
tract would be let to the lowest responsible bidder, and

at the time so designated the Warren Construction Company, a different corporation from that of Warren Brothers Company, being the lowest bidder for furnishing the material and performing the work, and possessing proper facilities, was awarded the contract.

2. It is maintained that prescribing in the ordinance and specifications the use of a patented article, thereby excluded competition and hence the contract is void as creating a monopoly. This question is so completely answered by Mr. Chief Justice McBRIDE in *Johns* v. *City of Pendleton,* 66 Or. 182 (133 Pac. 817, 134 Pac. 312, Ann. Cas. 1915B, 454, 46 L. R. A. (N. S.) 990), a case involving similar facts, that no further elucidation is deemed essential or will be made, except merely to refer to the cases of *Sherrett* v. *Portland,* 75 Or. 449 (147 Pac. 382), and *Temple* v. *Portland,* 77 Or. 559 (151 Pac. 724), where it was held that there can be no valid objection made to the specification of a patented pavement, if the patentee offers to all bidders alike the right to make use of the protected article upon reasonable terms.

It is argued that the entry of the assessment for the improvement of the street in the Docket of City Liens was insufficient to create an encumbrance upon the plaintiff's land, and this being so, no authority existed for decreeing a foreclosure of the alleged claim. Section 42 of the organic law of Seaside declares:

"When a special assessment shall be confirmed, the Auditor and Police Judge shall indorse a certificate thereof upon the roll, showing the date of confirmation. When any special assessment shall be confirmed by the Council, it shall be final and conclusive. All special assessments from the date of confirmation thereof, constitute a lien upon the respective lots or parcels of land assessed, and shall also be a charge against the person to whom assessed until paid. Upon the confirmation

of such assessment it shall be the duty of the Auditor and Police Judge to enter a statement thereof in the Docket of City Liens."

Section 43 of the charter defines such docket and prescribes that there shall be entered therein

"the following matters in relation to assessments for the improvement of streets. 1. The name of the owner thereof, or that the owner is unknown. 2. The number or letter of the lot assessed and the number or letter of the Block and the town or addition in which it is situated, or, if a tract of land, a description of the tract of land. 3. The sum assessed upon such lot or tract of land and the date of entry. 4. The time and manner in which the assessment is to be paid."

A copy of that record was received in evidence, and as far as material herein, reads:

"Lien Docket Town of Seaside. Assessment of Bitulithic Pavement on Broadway West 1716.6 ft. Street Assessment No. 15 due and payable the 29th day of Sept. 1914, * * G. M. Grimes. Beginning at the intersection of the north line of Broadway with the east line of Third Street; thence east 176.47 feet to the west line of Fourth Street; thence North 86.94 feet; thence west to the east line of Third Street; thence south 86.84 feet to the place of beginning, $798.82."

Two other tracts of land are assessed to him in the same manner, describing the premises with equal particularity and imposing a charge on each parcel respectively of $867.35 and $20.60, amounting to $1,686.77.

A certificate appended to the docket states:

"That the above and foregoing Assessment Roll No. 15 was accepted and confirmed by Ordinance No. 212, duly passed and approved on the 29th day of September, 1914."

"(Signed)    J. L. BERRY.
"Auditor and Police Judge."

3. It is argued that this record does not state the name
of the owner of any parcel of land therein described,
nor the sum assessed upon any lot or tract, nor the
time or manner in which the assessment was to be paid.
The lien docket does not in express terms declare that
the names of the persons appearing at the left of the
pages thereon are severally the owners of the real prop-
erty so described, nor state that the sums of money sev-
erally placed at the right of the pages after each de-
scription of land were the amounts imposed upon the
premises.   From the title of that part of the book, as
hereinbefore set forth, and from the excerpts made
therefrom, these facts are fairly inferable from such
record.   Though the undertaking to improve Broadway
Street was to create a lien upon the land benefited, and
the proceeding was *in invitum,* all the requirements
that could have been of any advantage to the persons
to be charged with the assessment were sufficiently
complied with: Hamilton, Special Assess., § 710;
*Schwiesau* v. *Mahon,* 110 Cal. 543 (42 Pac. 1065).

4. It is insisted that the charter does not authorize a
foreclosure of such lien.   Section 45 of the municipal
organic law contains clauses as follows:

"The City of Seaside shall have power to bring suit
in the Circuit Court of the State of Oregon for Clatsop
County against the owner or owners of lot or lots, block
or blocks, parcel or parcels of land upon which the cost
of such improvements or repairs might or could have
been charged or imposed, and which were benefited
thereby. * * In any such suit so instituted all persons
whose property is, or would be, so liable for the pay-
ment of any such proportion of the assessment afore-
said, shall be joined as parties defendant in one action,
and the judgment rendered therein shall be a several
judgment *in rem* against each of said lots or parcels
of land owned by each of the several defendants for its
proportion of the cost of the improvement and costs

and disbursements, and the lien therefor shall be decreed upon the premises. The general laws of the State of Oregon governing suits in equity, service of summons, and other process, shall apply to any such suit.''

The trial court was thus clothed with ample authority to declare that the lien subsisted, to order a foreclosure thereof, and to direct a sale of the land. It follows that the decree should be affirmed and it is so ordered.

AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MCCAMANT and MR. JUSTICE BEAN concur.