Argued June 5, affirmed July 8, 1919.

## COLE *v.* CITY OF SEASIDE.

(182 Pac. 165.)

**Municipal Corporations—Streets—County Roads—Control by City.**

1. Although a county road may traverse land within the limits of an incorporated city or town, yet, unless the state through its legislative department, or the county as the agent of the state, employing procedure prescribed by statute, surrenders authority over the road, the city cannot assume control.

**Dedication—County Roads—Acceptance—Improvement.**

2. Where many years prior to the adoption of the original act incorporating municipality a highway located within the boundaries of the municipality was laid out, and the county expended money in improving the road, both before and after incorporation, there was a dedication and acceptance by the county constituting the highway a regular county road.

[As to acceptance implied from user, see note in 129 Am. St. Rep. 621–629.]

93 Or. —5

Municipal Corporations—Streets—County Road.

3. The mere fact that the county road is embraced within the boundaries of a recently created municipality does not *ipso facto* make it a city street.

Municipal Corporations—Street Improvements—Powers of—County Road—Authority.

4. Mere consent will not confer jurisdiction upon a tribunal having limited authority in matters where it has no power to conduct such proceeding, and therefore consent of abutting owners to the improvement of a county road within its limits does not give the municipality jurisdiction to order such improvement.

Municipal Corporations—Public Improvements—Estoppel of Abutting Owner—Assessments.

5. Where municipal authorities ordered the improvement of county road within its boundaries, the fact that an abutting owner, in remonstrating or protesting against the improvement, referred to the road as a street, using the same language that was used by the council in the ordinance ordering the improvement, does not estop such property owner from denying the authority of council to order the improvement.

Municipal Corporations—Road Improvements—Council Authority.

6. While the electors of a municipality may, pursuant to Article XI, Section 2, of the Constitution through the exercise of initiative power conferred in Article IV, Section 1a, amend the charter, such power does not authorize a municipality to do anything not strictly forbidden, and to warrant a municipality in improving a county road such power must be plainly disclosed by the terms of its charter, which must be strictly construed.

From Clatsop: JAMES A. EAKIN, Judge.

Department 1.

This is a suit to restrain the defendant city and its officers from enforcing against the plaintiff's realty an alleged lien claimed by the municipality for the expense of improving what the plaintiff maintains is a county road, in front of his premises, and the city contends is a street within its corporate limits. This is the second appeal in this cause. It first came before this court on demurrer to the complaint and the opinion is reported in 80 Or. 72 (156 Pac. 569). After the case was remanded for further proceedings, an issue of fact was joined on the allegation of the plaintiff

that the way in question was a county road, testimony
was taken and a decree rendered in favor of the plaintiff, from which the defendants appeal.    AFFIRMED.

For appellants there was a brief over the names of
*Mr. Victor J. Miller,* City Attorney, and *Messrs. G. C.
& A. C. Fulton,* with oral arguments by *Mr. Miller* and
*Mr. G. C. Fulton.*

For respondent there was a brief and an oral argument by *Mr. E. E. Gray.*

BURNETT, J.—1. The demurrer considered in the
former opinion admitted the averment of the complaint
that the way in question is a public county road, which,
as we decided there on construction of the legislative
charter of Seaside, the city had no jurisdiction to improve.    The same doctrine was approved in *Christie*
v. *Bandon,* 82 Or. 481 (162 Pac. 248), and in *Cooper* v.
*Fox,* 87 Or. 657 (171 Pac. 408).    The law may thus be
considered as settled, that although a county road may
traverse land within the limits of an incorporated city
or town, yet unless the state through its legislative department, or the county as the agent of the state, employing the procedure prescribed by the statute, surrenders the authority over the county road, the city
cannot assume such control.

2. In view of the denial by the defendants that the
thoroughfare in question is a county road, it becomes
necessary to examine the testimony in order to determine that issue of fact.    At the trial the plaintiff introduced various records and files of the County Court,
showing acts of control exercised by the county over
the way in question.    In order to save the expense of

the exemplification of those records, it was stipulated by the parties that:

"The way in question described in the pleadings and evidence herein as 'Seventh Street' in the city of Seaside (formerly town of Seaside) in Clatsop County, State of Oregon, was at the date of and for many years prior to the adoption of the original act incorporating the town of Seaside (now City of Seaside) had been a public highway by user, the same having been used and employed by the public as a common public highway for travel for over twenty years prior to the adoption of the original act incorporating the town of Seaside."

It is in testimony that the county authorities caused the road to be surveyed before Seaside was ever incorporated, and that the county also expended money and labor in improving it both before and after the incorporation of the city. This amounts to a dedication of the road for public use by acts *in pais* coupled with an acceptance by the county, thus constituting it a regular county road. This is the doctrine taught in the cases of *Bayard* v. *Standard Oil Co.*, 38 Or. 438 (63 Pac. 614); *Nosler* v. *Coos Bay R. R. Co.*, 39 Or. 331 (64 Pac. 644, 22 Am. & Eng. R. R. Cas. 720); *Ridings* v. *Marion County*, 50 Or. 30 (91 Pac. 22), and *Eastman* v. *Clackamas County* (C. C.), 12 Sawy. 613 (32 Fed. 24). The stipulation together with the undisputed facts relating to the control exercised over the way by the County Court stamp it indubitably as a county road.

3. Upon the facts as admitted by the demurrer, we decided in the former opinion that the county had not surrendered control over the county road; nor had the state done so by any legislation relating to the town or City of Seaside, and hence that the city had no authority to improve the same. The conclusion there reached has been stoutly contested by the defendants both in

their brief and in the oral argument.    They cite a number of authorities in support of their proposition which they thus state:

"Whether a certain way is a street or county road is purely a matter of geography.    If beyond the boundaries of a municipality, it is a county road; if within the boundaries of a municipality, it is a street."

These precedents have had our careful consideration and while some of them declare as a conclusion from the legislation involved that the incorporation of a road within the city limits makes it *ipso facto* a street, a careful analysis shows that the rule announced in those decisions rests upon a construction of the statute there under consideration.    For instance, in *Benton* v. *State,* 168 Ala. 175 (52 South. 842), the legislative charter required the city to keep in repair "all bridges, public roads and streets."    *McGraw* v. *Stewart,* 51 Kan. 185 (32 Pac. 896), depends upon a general statute giving cities control of all ways within their boundaries.    In such instances the state law has visited upon the cities authority over county roads within their limits to the exclusion of the county authorities.    There are instances of the kind in Oregon, but this is not one of them.    *County Commissioners* v. *City of Jacksonville,* 36 Fla. 196 (18 South. 339, 29 L. R. A. 416), states the principle thus:

"That whether the county commissioners had been deprived of a jurisdiction of such road within the new town organization depends upon the legislation upon the subject of public roads and municipal corporations, and that the intent of the legislature as manifested by the statute would control."

Again, *Sanderson* v. *Texarkana,* 103 Ark. 529 (146 S. W. 105), uses this language:

"The state in its sovereignty over all public highways has full power over the streets as well as over all public roads and unless prohibited by the Constitution the legislature may confer on such agency as it may deem best the power of supervision and control over streets."

In the light of these authorities cited by the defendants in support of their postulate, we are brought back to the rule declared by Mr. Justice BEAN in *Bowers* v. *Neil,* 64 Or. 104 (128 Pac. 433), that:

"Whether a county road becomes a street when included within the corporate limits of a city depends upon the intention of the legislature as gathered from the city charter, general laws and the whole course of legislation on the subject."

Under these circumstances it is not deemed necessary to reopen the discussion or to vary from the conclusions on the law reached in the former decision. As already pointed out by the testimony, the fact is that the way here involved is a county road as alleged in the complaint, so that thus far in the investigation both the law and the fact are with the plaintiff.

4 5. The only remaining question necessary to be considered is whether the plaintiff is estopped to resist the proposed sale of his property. The defendants rely greatly on the fact that while the matter of the proposed improvement was under consideration by the city council the plaintiff and others lodged with that body a writing which is here quoted, after the date and address:

"We, the undersigned, property owners in the district to be assessed for the improvement of Seventh Street, formerly and commonly known as Main Street, from its intersection with the south boundary line of Avenue B, produced westerly, formerly and commonly

known as Washington Street; to its intersection with the north boundary line of First Avenue, east of said Seventh Street, formerly and commonly known as Duane Street, in the city of Seaside, Oregon, in the following manner, to-wit: by paving said street forty feet in width, twenty feet on each side of the center line of said street, with gravel bitulithic pavement, by constructing artificial stone curbs along each said pavement, by making the necessary excavation and fill to bring said street to the established grade as established by Ordinance No. 107 of the city of Seaside, Oregon; hereby remonstrate against said improvement for the following reason:

"That the present street is in a good condition and that it is an unnecessary expense to the property owners to make such improvements until such time as the sewer shall have been laid upon the said street, also the present water mains will have to be changed within a short time, and until said sewer and water mains are laid permanently it would be an unreasonable expense to put on the property owners along said street.

"Trusting that you will give this remonstrance your careful consideration, we remain, your petitioners."

Admittedly this paper was signed by the plaintiff with others. First of all, this is a remonstrance, an objection. No importance can be attached to the fact that the way is called a street in the writing. That portion of the instrument is substantially a quotation of the language used by the city authorities in framing the ordinance and was probably used by the plaintiff and his associates to make the remonstrance correspond in nomenclature with the proceeding it was designed to oppose. The whole instrument amounts to no more than their saying:

"On the assumption of the city that this is a street we remonstrate against its improvement."

In no way do the signers submit themselves to the jurisdiction of the city or invite the municipality to incur the expense of paving.

The council had no jurisdiction over the subject matter of improving a county road at the expense of the abutting property owners. Mere consent will not confer jurisdiction upon a tribunal having limited authority in matters where it has no power to conduct such a proceeding. Since the case of *Strout* v. *Portland,* 26 Or. 294 (38 Pac. 126), it has been the rule in this state that:

"When in proceedings for the levy of an assessment for a public improvement, the common council is without jurisdiction from the beginning, a person whose property is benefited by the improvement, but who did not ask for such improvement, may deny the validity of the proceedings, although he made no objection while the improvement was in progress."

The doctrine is thus stated in *Ladd* v. *Spencer,* 23 Or. 193, 198 (31 Pac. 474):

"But the respondent objected by written protest at the inception of the proceedings, and he thereby challenged the act of the council and its officers. It cannot be said that he encouraged the improvement. The charter made no provision that before a person could be heard in an equitable proceeding he must tender the amount of benefits. If an owner of property were obliged to do this as a condition precedent before he could maintain a suit, it would tend to do away with every jurisdictional requirement in the proper levy of special assessments, as the council of a city could, without observing the requirements of a charter, order the improvement of a street and compel the owner of the property benefited to tender the amount of the benefits before he could enjoin the officer from executing a void process."

Like authority is found in *Smith* v. *Minto,* 30 Or. 351
(48 Pac. 166) ; *Bank of Columbia* v. *Portland,* 41 Or. 1
(67 Pac. 1112) ; *Jones* v. *Salem,* 63 Or. 126 (123 Pac.
1096), and *Dyer* v. *Bandon,* 68 Or. 406 (136 Pac. 652).
In *Jones* v. *Salem* the municipality had laid down a
system of sewers and attempted to collect the expense
thereupon by assessment upon property said to be
benefited.  At that juncture the property owners re-
sisted, on the ground that the city had not acquired
jurisdiction, and were successful although the improve-
ment had been made and was probably for the benefit
of their holdings.

The defendants count on *Grimes* v. *Seaside,* 87 Or.
256 (170 Pac. 310), to sustain their contention that the
plaintiff on account of his knowledge that the way in
question, whether county road or city street, was being
improved by the city, coupled with his failure to pro-
test, is now equitably estopped to maintain this suit.
In that case, however, as the opinion of Mr. Justice
MOORE points out, the plaintiff himself with others had
dedicated an extension of Bridge Street which was
afterwards renamed Broadway Street, ''no part of the
improvement abutting upon his premises was made
upon the county road,'' the street at that point as so
dedicated being wholly south of the road and the char-
ter formula for acquiring jurisdiction having been fol-
lowed.  There the way to be improved had been dedi-
cated as a street and not as a road.  Here it was
dedicated as a county road before the city existed.
There the county had not accepted the dedication so
far as the record discloses.  Here the county did
accept the dedication by assuming control and expend-
ing money in its improvement even after the city was
incorporated.  There the charter gave the city juris-

diction over streets and it accepted the dedication by inaugurating a system of improvement on the street thus offered by the plaintiff himself. There the county never took control of the way, and here it has never surrendered such control in any way known to the law.

6. The error of the defendants seems to lie in the assumption that a chartered municipal corporation may do anything not strictly forbidden by its charter, especially as its voters may amend such instrument according to the second section of Article XI of the state Constitution through the exercise of the initiative power conferred by the same Constitution in Section 1a of Article IV. This assumption is not in harmony with the long-established rule of construction that warrant for any action of a city must be plainly disclosed by the terms of its charter, which must be strictly construed.

This rule of construction was followed in the decision of the former appeal of this case. In the later opinion by Mr. Justice HARRIS in *Portland* v. *Portland Ry. L. & P. Co.*, 80 Or. 271, 297 (156 Pac. 1058), treating of municipal power of taxation, we find this language:

"The rule is especially applicable to the power to tax (4 Dillon Mun. Corp. [5 ed.], Section 1378), because a city possesses no inherent power to tax and 'the grant relied upon must be evident and unmistakable and all doubts will be resolved against its exercise and in favor of the taxpayer': *Corbett* v. *City of Portland*, 31 Or. 407, 415 (48 Pac. 428); *Stevens* v. *Taylor*, 79 Or. 424 (154 Pac. 896)."

From the same pen came this excerpt in *Robertson* v. *Portland*, 77 Or. 121, 128 (149 Pac. 545):

"It is hornbook law that municipal corporations have no powers except such as are granted in express words by their charters, or such as are necessarily implied from those granted or those essential to the declared objects and purposes of the corporations: *Corvallis* v. *Carlile,* 10 Or. 139 (45 Am. Rep. 134); *Beers* v. *Dalles City,* 16 Or. 334 (18 Pac. 835); *Pacific University* v. *Johnson,* 47 Or. 448 (84 Pac. 704); *McDonald* v. *Lane,* 49 Or. 530 (90 Pac. 181); *Naylor* v. *McColloch,* 54 Or. 305 (103 Pac. 68); *Mutual Irr. Co.* v. *Baker,* 58 Or. 306 (110 Pac. 392, 113 Pac. 9); *Rosa* v. *Bandon,* 71 Or. 510 (142 Pac. 339)."

In *State ex rel.* v. *Port of Astoria,* 79 Or. 1 (154 Pac. 399), the court had under consideration two sections of our state Constitution, viz.: Article XI, Section 2, giving to the legal voters of every city and town "power to enact and amend their municipal charter, subject to the constitution and criminal laws of the State of Oregon," and Article IV, Section 1a, reserving the initiative and referendum powers "to the legal voters of every municipality and district as to all local, special and municipal legislation of every character in or for their respective municipalities and districts." By analogy the doctrine of strict construction in such matters and the reason for it are there given utterance as follows:

"While the prime purpose is to ascertain and give effect to the intention as expressed in the language employed, yet the two sections now being considered are designed to grant attributes of sovereignty to specified local subdivisions and such grant being a limitation on the power of the legislature, it should be strictly construed, as was properly held in *Thurber* v. *McMinnville,* 63 Or. 410, 414 (128 Pac. 43); and this rule of construction must be applied here notwithstanding the suggestion broached in *State* v. *Schluer,* 59 Or. 18, 27 (115 Pac. 1057), and regardless of the

inference that may possibly be drawn from *Schubel* v. *Olcott,* 60 Or. 503, 515 (120 Pac. 375)."

Before the advent of the initiative and referendum the reason for construing strictly the legislative grants of power to municipalities in the form of charters was that they were in derogation of the sovereignty of the state. This being true as a canon by which to construe an act of the legislature which, as a law-making body is restrained only by the Constitution, it is equally applicable to a mere local fraction of the people exercising the initiative in enacting and amending charters, for this power is expressly subject not only to the same Constitution that controls the legislative assembly but also to "the criminal laws of the State of Oregon." It would be fallacious to lay down as a premise that all power over municipalities has been wrested from the legislative assembly and set at large to be employed only by those institutions themselves. On the contrary, we are taught in *State ex rel.* v. *Port of Astoria,* 79 Or. 1 (154 Pac. 399), that while the legislature cannot create a corporation by special law, yet "it has the power to provide for the formation of corporations under general laws, whether such corporations be private or public, essentially proprietary, or purely municipal." Not only so, but municipalities in their charter schemes are subject to the Constitution and criminal laws which are themselves restrictive in their operation. It logically follows that that which is the product of a limited authority and is in derogation of the primal sovereignty of the people, as embodied in the state government, should be strictly construed.

Drawing an analogy from such cases as *Northern Pacific Terminal Co.* v. *Portland,* 14 Or. 24 (13 Pac. 705) ; *Bewley* v. *Graves,* 17 Or. 274 (20 Pac. 322) ; *Sime*

v. *Spencer,* 30 Or. 340 (47 Pac. 919) ; *French-Glenn Co.*
v. *Harney County,* 36 Or. 138 (58 Pac. 35), and *Jones*
v. *Polk County,* 36 Or. 539 (60 Pac. 204), it might be
argued that the acts of the defendant would be pre-
sumed to be regular. A very marked distinction, how-
ever, is to be observed respecting governmental agen-
cies possessing limited functions, in the matter of
obtaining jurisdiction *in limine,* and of exercisng such
jurisdiction after it has been acquired. As to the
former, the conditions giving the municipality power
to act at all must clearly be made to appear both as to
subject matter and as to persons to be affected. In
the instant case a proper construction of the charter
of Seaside in its various forms discloses that the city
has no jurisdiction over the subject matter of improv-
ing the county road in question. Pursuit of its pre-
scribed formula for acquiring jurisdiction over per-
sons in a scheme where it has charter power to act
does not affect those persons in any matter over which
it has no jurisdiction.

The state is yet the chief and principal manifesta-
tion of the governmental power of the people. All
other agencies, including cities, are subordinate. A
little leaven of charter power will not leaven the whole
lump of jurisdiction, and until the county as the agency
of the state constituted for that purpose through some
recognized procedure has surrendered its authority
over the county road, or there is some competent legis-
lation on the subject, the city cannot assume control
of it in excess of the powers granted.

The decree of the Circuit Court is affirmed.

AFFIRMED.

McBRIDE, C. J., and BENSON, J., concur.

HARRIS, J., concurs in the result.