Argued March 8, reversed and remanded March 29, 1921.

## CHAPMAN *v.* HOOD RIVER.

(196 Pac. 467.)

**Constitutional Law—Compensation for Property Taken is a Judicial Question.**

1. The legislature cannot fix compensation for property taken under the power of eminent domain; such matter is a judicial, and not a legislative, question.

**Eminent Domain—City Held Authorized by Charter to Lay Out and Open Streets.**

2. Under Hood River City Charter (Sp. Laws 1901, p. 817), Chapter 8, Section 49, and Chapter 9, Sections 75, 80, 84, 87, the city is fully authorized to lay out, establish, and open streets.

**Eminent Domain—Common Council on Writ of Review of Proceedings to Open Street must Show Qualifications of Assessors.**

3. The condemnation of real property not being an *ex parte*, but strictly an adversary, proceeding, the common council of a city in the exercise of its functions under the charter in opening a street should be required on writ of review affirmatively to show the qualifications of the assessors of damages.

**Highways—Municipal Corporations—Termini of County Road or City Street must be Definitely Located.**

4. It is essential to the lawful location of a county road or a city street that the termini of the same be definitely located.

**Navigable Waters—City Council Without Power to Locate Street Across Navigable Waters.**

5. The city council of Hood River has no power to locate a street extending to the north line of the city of Hood River, which north line coincides with the north line of Hood River county, which is in the navigable waters of the Columbia River, as authority in a city to lay out highways does not include power to lay one out over navigable waters.

**Navigable Waters—Lands Under Navigable Waters of River Belong to State.**

6. Lands under the navigable waters of the Columbia River within the corporate limits of the city of Hood River are the property of the State of Oregon.

From Hood River: FRED W. WILSON, Judge.

Department 2.

This is a proceeding by writ of review instituted in the Circuit Court of the State of Oregon in and for Hood River County. Its purpose is to review the action taken by the common council of the City of Hood River in undertaking to lay out and establish two certain streets within the corporate limits of said city.

The charter of the City of Hood River granted by the legislative assembly of 1901 (see Special Laws, p. 817) contains two chapters relating to streets: Chapter 8, concerning streets, the grade and im-

5. Right to locate highway over or into navigable waters, see note in 14 Ann. Cas. 288.

6. Power of state to grant title to land under navigable water, see notes in 53 Am. St. Rep. 297; Ann. Cas. 1918B, 1107.

provement thereof, and Chapter 9, relating to opening streets.

Section 49, Chapter 8, provides:

"The common council shall have power and authority, whenever it deems it expedient, to establish or alter the grade of, and to improve or repair any street or alley, or any part thereof, now or hereafter laid out * * ."

Section 75, Chapter 9, provides:

"Whenever the council shall deem it expedient to open, lay out, establish, * * or extend a street or alley, it shall cause the city surveyor to survey such proposed change or new street or alley, and make a report thereof containing a plat of the survey * * , and the portion of each lot, * * or tract required to be appropriated for such * * new street or alley, * * , which report, if satisfactory to the council, shall be adopted by ordinance embodying the same. Provided, that before the adoption thereof the recorder shall give notice of the filing of such report, by publication for two weeks in some newspaper published in the City of Hood River, or by written notices posted for two weeks at three public places in said city, and at the next regular meeting of the council after the completion of such notice, present to it the said report, and attached thereto a copy of such notice, with the proof of publication or posting indorsed thereon. Thereafter, and within sixty days from the adoption of such report, the council shall appoint three disinterested freeholders of the City of Hood River, not related by consanguinity or affinity to any owner or person interested in any property to be appropriated, and possessing the qualifications of jurors in courts of justice for Wasco County, to view such proposed street or alley, and make an appraisement of the damages, if any, to the respective owners of the property required to be appropriated, and report the same to the common council * * ."

Section 80 of said Chapter is as follows:

"In estimating the damages to the premises of any person pursuant to this chapter, the viewers and jurors shall be governed by the differences in the market value, if any, of the premises of such persons, before and after the opening, widening, extending or straightening of such street or alley; and may consider any use of the premises for which it is adapted, including the platting of the same into lots and blocks, and they shall consider only such damages or conveniences caused by such street or alley as affects the use of said premises for the purpose for which it is the most valuable in the market."

Section 84 provides:

" * * The common council shall, * * order a warrant drawn * * for damages, or damages and costs, awarded to the owner * * of the property appropriated, * * if it shall determine to open, lay out, establish, widen, straighten or extend said street or alley, and cause such report, survey and plan to be recorded in the record of city surveys, and from thenceforth said street or alley shall be considered laid out, established * * or widened, as the case may be, and the council shall cause an order to issue directing said street * * to be so opened."

Section 87 is as follows:

"The common council has authority * * to open, establish and locate streets upon the roadbed of and upon or across any county road or public highway within the corporate limits * * ."

Sections 49 to 87, inclusive, relate to grading, the improvement, and opening of the streets of the City of Hood River.

The petition for the writ is full, and alleges, among other errors, the following:

"That the resolution of said common council of the City of Hood River adopted April 15, 1918, declaring the expediency of * * establishing * * said

streets and directing the survey thereof included two separate streets * * .

"That * * the common council appointed three viewers to view said two streets and appraise the damages to the owners of the lands taken by said streets, before the resolution * * had gone into effect.

"In appointing E. A. Franz, J. Wickham and James Stranahan as viewers, for the reason that at the time of making said view and appraisement * * they were not disinterested freeholders of the City of Hood River * * and were not qualified viewers.

"In applying an unlawful measure of damages in fixing compensation for the land condemned.

"That the said proposed River Street and Hood Street were not designed or intended as public streets of the City of Hood River, and that the said streets, as surveyed, platted and laid out, are over navigable waters of the Columbia River, where it is impracticable to construct a roadway * * .

"That no notice or information of any kind was given to the plaintiff of the award of said viewers, or of the amount awarded her."

Upon the plaintiff's giving an undertaking, the court ordered a writ of review, which was returned and filed July 7, 1919. Defendant moved the court for an order dismissing plaintiff's petition and quashing the writ of review and return thereon, upon the following grounds:

"That the plaintiff's said petition and the said return show that all proceedings taken and had relative to the opening of River Street and Hood Street were regular and lawful and in full compliance with the charter of the City of Hood River and with the laws pertaining to such proceedings, and that said petition for a writ of review does not state facts sufficient to constitute a suit or to show that the plaintiff is entitled to a writ of review or to any relief from this court, and this court has no

jurisdiction to review any order, decision, proceeding or thing. * *

"That the said petition and application of plaintiff for a writ of review was not filed or made herein within sixty days from the date of the decision or the determination complained of, and not within the time required by law for the filing and making of petitions and applications for writs of review * * ."

Thereafter, and on the twenty-sixth day of December, 1919, the court ordered and adjudged:

That "said motion to quash and dismiss be * * granted and allowed, and * * that the petition for the writ of review be * * dismissed, and that said writ of review be * * quashed and dismissed."

On February 2, 1920, plaintiff, by her attorney, filed a motion to set aside and open the order and judgment heretofore made sustaining the motion to quash the writ of review, which was, on February 14, 1920, denied by the court.

Thereafter, plaintiff appealed to this court, assigning errors as follows:

"That the court erred:

"In sustaining the motion of respondent to quash the writ of review, and in quashing the writ and dismissing the petition.

"In refusing to sustain the writ * * .

"In denying appellant's motion for an amended return to the writ."

REVERSED AND REMANDED.

For appellant there was a brief and an oral argument by *Mr. H. H. Riddell.*

For respondent there was a brief and an oral argument by *Mr. E. C. Smith.*

BROWN, J.—The plaintiff's right to review the proceedings of the common council of the City of

Hood River in attempting to lay out and open a street through her land is based upon the provision of our Code reading:

"Any party to any process or proceeding before or by any inferior court, officer or tribunal may have the decision or determination thereof reviewed for errors therein, as in this chapter prescribed, and not otherwise. Upon a review, the court may review any intermediate order involving the merits and necessarily affecting the decision or determination sought to be reviewed": Section 603, Or. L.

The right to review dates from the final order of the common council wherein it decided to lay out, establish, and open said streets as provided by Section 84 of the charter, because

"This writ does not lie from an interlocutory order, but from the determination of the matter": *Holmes* v. *Cole,* 51 Or. 483 (94 Pac. 964).

Did the council of Hood River exceed its authority by including two streets in one proceeding? 1 Elliott on Roads and Streets (3 ed.), Section 382, holds:

"It is perhaps irregular to include and describe more than one proposed highway in the same petition, and it is certainly safer and better, ordinarily at least, to file a separate petition in each case; but such irregularity is not jurisdictional. * * If the petition is sufficient as to one of the proposed highways, we see no good reason why the proceedings might not be carried on as to that one, even though it would be improper to establish more than one in a single proceeding."

In 37 Cyc., page 75, it is said:

"In the absence of express statutory authority, some decisions lay down the rule that several distinct highways cannot be prayed for in the same petition, unless they connect with one another or are closely

identified and designed to form a system of roads. On the other hand, it has been held that while such a proceeding is doubtless irregular, and it may be safer and better to require that a separate petition be filed in each case, such irregularity is not jurisdictional.''

*In the instant case,* Hood and River Streets connect, one with the other, and are so closely identified that we hold plaintiff's objection not well taken.

1. The plaintiff alleges error because of certain charter provisions relating to compensation for property taken under the right of eminent domain. The legislature cannot fix compensation or prescribe the rules for its computation. Just compensation as damages for property taken under the power of eminent domain presents a judicial, and not a legislative question. The Supreme Court of the United States in the case of *Monongahela Navigation Co.* v. *United States,* 148 U. S. 312 (37 L. Ed. 463, 13 Sup. Ct. Rep. 622), said that:

''The legislature may determine what private property is needed for public use,—that is a question of a political and legislative character; but when the taking has been ordered, then the question of compensation is judicial. It does not rest with the public, through Congress or the legislature, its representatives, to say what compensation shall be paid, or even what shall be the rule of compensation. The Constitution has declared that just compensation shall be paid, and the ascertainment of that is a judicial inquiry.''

In the case of *Beekman* v. *Jackson Co.,* 18 Or. 283, 286 (22 Pac. 1074, 1075), which arose out of a proceeding for the condemnation of land for the purposes of public highway in Jackson County, this court said:

"Nor should their lands be taken for such purpose without just compensation. The Constitution of the government guarantees them that, and its provisions should be observed. The reasonable value of the land taken, the effect of the taking upon the remainder, the manner of the location of the road, the necessity it may occasion for the removal or building of fences, and any other material inconvenience or burden it may create, should be fairly considered, and the sum of the several items should be allowed the owner, subject to any reduction on account of *special* benefits he may derive therefrom."

We assume that the appraisers in the case at bar followed the law as here set down. There is nothing in the record that we may review showing anything to the contrary.

It is asserted by appellant that the City of Hood River has no charter power to lay out streets. As a general rule, when the state grants a charter incorporating towns and cities, it expressly empowers such town or city to establish, lay out, and open streets. It is argued that the charter of the City of Hood River contains no such grant of authority.

"It is a well-settled rule of construction of grants by the legislature to corporations * * that only such powers * * can be exercised under them as are clearly comprehended within the words of the act": *Corvallis* v. *Carlile,* 10 Or. 141 (45 Am. Rep. 134).

To similar effect is *Robertson* v. *Portland,* 77 Or. 121, 128 (149 Pac. 545, 547), where it is said:

"It is hornbook law that municipal corporations have no powers except such as are granted in express words by their charters, or such as are necessarily implied from those granted or those essential to the declared objects and purposes of the corporations." Also Oregon cases there collected.

To the same effect is *Cole* v. *City of Seaside,* 93 Or. 75 (182 Pac. 165).

"It is likewise a rule of construction that grants of power are not to be so construed as to defeat the intent of the legislature or to withhold what is given either expressly or by necessary and fair implication": *United States* v. *Denver etc. R. Co.,* 150 U. S. 14 (37 L. Ed. 979, 14 Sup. Ct. Rep. 16, see, also, Rose's U. S. Notes); *Tod* v. *Kentucky Union Land Co.* (C. C.), 57 Fed. 50.

2. The legislative assembly of 1901 incorporated the City of Hood River by granting it a charter containing 126 sections, 39 of which relate wholly to streets. As will be seen from the excerpts from the charter quoted in our statement, the common council is empowered to establish or alter the grade of, and to improve or repair, any street "now or hereafter laid out or established within the corporate limits of the city." By the provisions of Section 75 of said charter, the council is authorized, whenever it shall deem it expedient, to open, lay out, establish, widen, straighten, or extend streets, and the procedure for so doing is provided therein. We hold that under the provisions of its charter, the City of Hood River is fully authorized to lay out, establish, and open streets.

Error is asserted because of the failure of the record to affirmatively show the qualifications of the appraisers of damages as provided by Section 75 of the charter of Hood River, which provides that:

"The city council shall appoint three disinterested freeholders of the City of Hood River, not related by consanguinity or affinity to any owner or person interested in any property to be appropriated, and possessing the qualifications of jurors in courts of justice for Wasco (now Hood River) County, to view

such proposed street * * and make an appraisement of the damages.''

The minutes of the city council relating to the appointment of such viewers are as follows:

''In the matter of the proposed Opening of Hood Street and River Street as called for in Ordinance No. 573, adopting the City Surveyor's report.

''It was moved by Sinclair, 2d Cuddeford, that E. A. Franz, J. Wickham and James A. Stranahan be appointed as appraisers, and that they be instructed to appear at the city recorder's office and qualify and make the appraisement February 11, 1919, at 10 o'clock A. M.

''Carried.''

In the disposition of this question, we are controlled by the doctrine enunciated in the case of *N. P. T. Co.* v. *City of Portland,* 14 Or. 24, 26 (13 Pac. 705). In that case the court had under construction, Sections 80, 81, 82 and 84 of the charter of the City of Portland, reading as follows:

''Sec. 80. The common council of the City of Portland has power and authority within the city, whenever it deems it expedient, to open, lay out, establish and widen streets and alleys, and to appropriate private property for that purpose.

''Sec. 81. Whenever the council shall deem it expedient to lay out and establish or widen a street or alley, it shall direct the city surveyor to survey such proposed new street or alley * * and to mark the boundaries thereof, and to make his report, containing a plat of the survey, etc.

''Sec. 82. Thereafter, and within thirty days from the adoption of such report, the council shall appoint three disinterested freeholders of the City of Portland, no kin to any owner or person interested in any property to be appropriated, possessing the qualifications of jurors of the Circuit Court of the County of Multnomah, to view such proposed street, and make an assessment of damages and benefits, as

provided in the next following section of this act. * *

"Sec. 84. If it shall appear to the council that the damages assessed are unreasonable, or that the benefits assessed are insufficient in any respect, the council may set aside such view, and order another view, under the same regulations as provided in case of the first view. * * "

The court then said:

"The only recital in the record made by the council on the subjects enumerated in Section 82 is as follows:

" 'Whereas R. L. Durham, C. C. Redman, and Edward Champion are freeholders within the State of Oregon, and are disinterested in the property and lands proposed to be appropriated in the opening, laying out and establishing of the extension of North Third Street, from the north line of H Street to the west line of North Front Street, in the City of Portland, County of Multnomah and State of Oregon— said extension to be seventy feet in width—and whereas said persons possess the qualifications of jurors of the Circuit Court of Multnomah County, and are not of kin to any person owning or interested in the property to be appropriated for such purpose,' etc.

"The common council of the City of Portland, in exercising the powers conferred by the charter relative to the appropriation of private property for the purpose of opening, laying out and establishing streets or alleys within said city, is an *inferior tribunal*, and it must comply strictly with every prerequisite of the statute; and unless it does so its acts are void."

The court further held:

"It is said that the plaintiff received from the City of Portland the amount of money specified in the report of the viewers; but this fact does not appear in the record. The only reference to it is in a certificate made by the auditor and clerk of the city; but we are unable to find any authority in the city

charter, making his certificate evidence of any facts whatever. He can make and authenticate by his certificate copies of all records of which the law makes him the custodian, but beyond this his certificate is without legal effect.

"It was also argued by the city attorney, that the affidavit made by the viewers supplied the omissions in the record of the proceedings of the common council. There are two objections to this argument. The first is, that the council must appoint persons who are qualified, and their record must show the facts."

In *Bewley* v. *Graves,* 17 Or. 274, 283 (20 Pac. 322, 326), Mr. Justice STRAHAN, who spoke for the court in *Northern Pac. T. Co.* v. *City of Portland,* 14 Or. 24, 26 (13 Pac. 705, 706), wrote that:

"Counsel for respondent rely very much on *Northern Pac. T. Co.* v. *City of Portland,* 14 Or. 24 (13 Pac. 705). But it fails to sustain his contention, for two reasons. The common council of the City of Portland cannot be said to be a court in any sense of that term, but it has certain specified and limited powers conferred upon it to lay out and widen streets, etc., which it may exercise by complying with the charter."

In *Towns* v. *Klamath County,* 33 Or. 225 (53 Pac. 604), this court held that after a County Court has acquired jurisdiction in a proceeding for locating a public road, the same presumptions prevail regarding its proceedings as would prevail concerning courts of general jurisdiction. Therefore, it will be presumed on appeal that persons appointed as viewers of a proposed road are disinterested freeholders as required by statute, when the contrary is not shown. The court further says:

"In making the appointment the court acts judicially; and it is a reasonable intendment that it has performed its duty, until the contrary appears."

It further states that:

"The case of *Northern Pac. T. Co.* v. *City of Portland,* 14 Or. 24 (13 Pac. 705), is not in point here, because it involved the validity of the proceedings of the common council of the City of Portland in appropriating private property for the purpose of opening and establishing a street."

—and quotes with approval the comment of this court made in *Bewley* v. *Graves,* 17 Or. 274, 283 (20 Pac. 322, 326), concerning *Northern Pac. T. Co.* v. *City of Portland.*

Again, this court followed the case of *Northern Pac. T. Co.* v. *City of Portland,* 14 Or. 24 (13 Pac. 705):

"The city, in eminent domain proceedings, is an inferior tribunal, and must strictly comply with every prerequisite of the statute. If it does not its acts are void": *Thurman* v. *Multnomah County,* 70 Or. 401, 406 (140 Pac. 626, 627, 141 Pac. 1015).

We are well aware that in other jurisdictions courts have held that, whenever power is given to establish highways by proceedings before local tribunals, such as boards of supervisors, boards of commissioners, and common councils, such tribunals, when they are thus engaged, are exercising judicial functions.

3. The condemnation of real property is not an *ex parte,* but strictly an adversary proceeding. Private property is being taken for public use against the will of the owner. It is not too much to require the common council, in the exercise of its functions, to affirmatively show the qualifications of the assessors of damages, and we so hold.

The principle that the minutes of the common council must affirmatively show the qualifications of the

viewers appointed to assess damages, has become *stare decisis* in this state. As well stated by Mr. Justice BURNETT in *Kalich* v. *Knapp,* 73 Or. 577 (142 Pac. 594, 145 Pac. 22):

"Another doctrine equally well settled is that of *stare decisis,* to the effect that when a decision has once been rendered, it amounts to an authoritative construction of the law, and should not be disregarded or overturned except for very cogent reasons showing beyond question that on principle it was wrongly decided. The principle is that laws are largely conventional rules of action, and it is more important that the rule be settled as a guiding precept to the public than that by the action of the courts the law should be made to fluctuate like the tides."

The report made to the common council of Hood River by the city surveyor shows that:

"Said survey and streets run in a northerly direction *to the city limits of Hood River* from the place where the public road crosses the north line of the right of way of Oregon-Washington R. R. & Nav. Co., 80 yards in a northeasterly direction from the passenger depot of said company * * . A more definite description of said streets is hereinafter contained in and made by the descriptions of the lands contained within the said survey and proposed streets."

Now, turning to the description of the lands referred to by the city engineer, the last description concludes with the words:

"Thence run north 24 deg. 06′ west to the corporate limits of the City of Hood River."

4. The point of termination of River Street is either in the navigable waters of the Columbia River, or else it is so indefinite that it does not constitute a valid location of the terminus of that street. It is essential to the lawful location of a county road or a

city street, that the termini of the same be definitely located. The resolution of the common council reads, in part, as follows:

"The common council of the City of Hood River deems it expedient to lay out, establish and open a street in the City of Hood River running in a northerly direction toward *or to the city limits* from the place where the public road crosses the north line of the right of way of the O. W. R. & N. Co. about 80 yards in a northeasterly direction from the passenger depot of said company, which said street shall be 80 feet in width and shall be known as River Street."

5. If the point of termination of this street is at the northern boundary of the City of Hood River, it is in the navigable waters of the Columbia River. The city council of Hood River has not the power to locate a street extending to the north line of the City of Hood River, for the reason that the north line of said city coincides with the north line of Hood River County, which is in the navigable waters of the Columbia River.

It is generally held that authority to lay out highways does not include the power to lay one out over navigable waters: 14 Am. & Eng. Ency. of Law (2 ed.), 357, citing *State* v. *Anthoine,* 40 Me. 435; *Cape Elizabeth* v. *Cumberland Co. Comm.,* 64 Me. 456; *Wells* v. *York Co. Comm.,* 79 Me. 522 (11 Atl. 417); *Commonwealth* v. *Coombs,* 2 Mass. 489; *Charlestown* v. *Middlesex Co. Comm.,* 3 Met. (Mass.) 202; 1 Farnham on Waters and Water Rights, 669.

6. The lands under the navigable waters of the Columbia River within the corporate limits of the City of Hood River are the property of the State of Oregon, for, as said by this court in *Monroe* v. *Withycombe,* 84 Or, 328 (165 Pac. 227):

"On its admission to the Union, Oregon was vested with title to the land under the navigable waters within the state, subject to the public right of navigation, and to the common right of citizens of the state to fish."

It is concisely stated by a text-writer that:

"When the limits of a municipal corporation are extended over adjacent navigable waters, the corporation is not vested with any interest in the land under the water, but merely acquires civil and criminal jurisdiction coextensive with its limits": 1 McQuillin on Municipal Corporations, p. 885.

The streets herein referred to have not been lawfully located and established.

The judgment appealed from is ordered reversed and the cause remanded for further proceedings in the court below, not inconsistent with this opinion.

REVERSED AND REMANDED.

BURNETT, C. J., concurs.

BEAN and JOHNS, JJ., concur in result.