# CITY OF CORVALLIS *v.* CARLILE.

MUNICIPAL CORPORATIONS—POWERS STRICTLY CONSTRUED.—In construing the powers given to a municipal corporation by its charter regard being had for the ends to be accomplished, the courts have inclined to adopt a strict rather than a liberal construction of such powers, thus applying substantially the same rule that is applied to charters of private incorporations.

IDEM.—Municipal corporations can exercise no powers but such as are expressly conferred upon them by the act of incorporation, or are necessary to carry into effect the powers thus conferred, or are essential to the manifest objects and purposes of the corporation.

IDEM.—Power to pass ordinances "to secure the peace of the city" does not include the power to pass ordinances upon subjects which do not affect, or tend to disturb, in a legal sense, the public peace. Offenses against public policy are not offenses against the public peace.

APPEAL from Benton County. The facts are stated in the opinion.

*John Kelsay and John Burnett*, for appellant:

Contend that municipal corporations have no power except those expressly given, or which are necessary to the exercise of expressly conferred powers. (*City of Oakland* v. *Carpenter*, 13 Cal., 540; *Robertson* v. *Groves*, 4 Oregon, 210: Kent's Com., 360 and note; Cooley on Const. Lim., 193–4, and note.) The authority to provide for the health and peace of the city, does not include good order or trade, as all charters do relied upon by respondent. (Charter of Corvallis, sec. 6, p. 5; Dillon on Municipal Corporations, sec. 330; 9 Ohio St. R., 439.)

*M. S. Woodcock and J. R. Bryson*, for respondent:

The ordinance in question is not inconsistent with the laws of the state. (Code, p. 437, sec. 668.) Every municipality has the power incidental to all corporations, to enact all by-laws necessary for its government, and essential to the purposes and objects of its corporate existence. (Dillon on Municipal Corporations, secs. 250 and 253; *Kyle* v. *Malin*, 8 Ind., 34; American Corporation Cases, 288; *Mc-Callis* v. *Mayor of Chattanooga*, 3 Head. (Tenn.) 317; *State* v. *Ferguson*, 33 N. H., 424.)

By the Court, LORD, C. J.:

The appellant was convicted in the recorder's court of the city of Corvallis, and sentenced to pay a fine, for keeping open his store in violation of a city ordinance, entitled "An ordinance to provide for the closing of stores, shops and places of business on Sunday." The important and really the only question which we are required to decide is, "Did the city council have the power, under their charter, to provide by ordinance against stores and shops being kept open on the first day of the week, commonly called Sunday, for the purpose of labor and traffic?"

A municipal corporation, says Mr. Justice Bradley, is a subordinate branch of the domestic government of the state. It is instituted for public purposes only, and has none of the peculiar qualities and characteristics of a trading corporation, instituted for the purpose of private gain, except that of acting in a corporate capacity. Its objects, its responsibilities, and its powers are different. As a local governmental institution it exists for the benefit of the people within its corporate limits. The legislature invests it with such powers as it deems adequate to the ends to be accomplished. (*The Mayor* v. *Ray*, 19 Wallace, 475.)

But in construing the powers given to a municipal cor-

poration by its charter, regard being had for the ends to be accomplished, the courts have inclined to adopt a strict rather than a liberal construction of such powers, thus applying substantially the same rule that is applied to charters of private incorporations. (Cooley on Constitutional Limitations, 195, and note.) They can exercise no powers but such as are expressly conferred upon them by the act by which they are incorporated, or are necessary to carry into effect the powers thus conferred, or are essential to the manifest objects and purposes of the corporation. The rule is well expressed by Mr. Justice Nelson in the case of *Minturn* v. *Laure*, 23 How., 430, in the following language: "It is a well settled rule of construction of grants by the legislature to corporations, whether public or private, that only such powers and rights can be exercised under them as are clearly comprehended within the words of the act, or derived therefrom by necessary implication, regard being had to the object of the grant. Any ambiguity or doubt arising out of the terms used by the legislature, must be resolved in favor of the public. The principle has been so often applied in the construction of corporate powers, that we need not stop to refer to authorities." (Dillon on Municipal Corporations, sec. 55, and notes.)

The proper determination of the question above suggested cannot be reached without an application of these principles of construction to the chartered powers of the respondent. At the outset it is conceded that the power to pass the ordinance in question is not conferred in direct terms upon the common council by the act of incorporation, but it is claimed that such power may be fairly implied from the authority conferred on the common council "to make by-laws and ordinances not inconsistent with the laws of the United States or of this state, to carry into effect the provisions of

this charter and secure the health, *peace* and improvement of the city." (Section 6, Charter of Corvallis.) An ordinance prohibiting stores and shops to be kept open on Sunday is one of the regulations, and to restrict the operation of the above clause of section 6, to the objects specified in other provisions of the same section or charter, would be fatal to the power to pass such ordinance. (*City Council of Montgomery* v. *Montgomery Plank Road Co.*, 31 Ala., 82; *Mount Pleasant* v. *Breeze*, 11 Iowa, 399; *St. Louis* v. *Laughlin*, 49 Mo., 599; *City of Keokuk* v. *Scroggs*, 42 Iowa, 451.)

The power conferred on the common council to regulate "taverns, ordinaries, bar-rooms and tippling houses," being all the houses, or places of business enumerated in that section, or referred to in the charter, cannot be considered to include the power to regulate stores and shops. We are not disposed to give this limited effect to the operation of this clause, but to include in the authority to pass ordinances to secure the "peace" of the city, such power as the word peace fairly imports, when applied to the ends to be accomplished by the corporation. The word peace, in its legal signification, means "quiet, orderly behavior of individuals to another," (Abbott's Dict., "Peace,") and "toward the government, which is said to be broken by acts of a certain kind," (Burrill's Dict., "Peace.") Any riotors, forcible or unlawful conduct or proceeding is a breach of the peach. Offenses against the public peace include all acts affecting the public tranquility, such as assaults and batteries, riots, routs and unlawful assemblies, forcible entry and detainer, &c. (4 Blk. Com., 142, *et seq.*; Stephen's Criminal Law, 78.)

Of course it is not supposed that the power conferred on the common council to pass ordinances to secure the peace

of the city extends to all acts or proceedings which might be included under offenses against the public peace. Such a construction would extend their power to every department of the criminal law affecting the public peace, which is not pretended, nor claimed. Our purpose is simply to show what the word *peace* imports in the legal sense, and the nature and quality of the acts or proceedings which disturb the peace of communities or governments, and render legislation essential and necessary to secure the public tranquility. These are acts or proceedings which are always disorderly in their quality and character, often violent, and sometimes dangerous "to life, limb and property," and the effect of which is to disturb the repose and break the peace of society. And within the scope of its authority, and to effect the governmental objects and purposes of its creation, the respondent, as a local government existing for the benefit of the people within its corporate limits, is authorized by its charter to enact such ordinances as shall secure the peace of the city, and to punish the peace-breakers "by fine not to exceed $100, and by imprisonment not more than 20 days." But can it be said that the keeping open of a store or shop on Sunday, and the selling of wares and merchandise, are acts of a disorderly character, or in any sense within the purview of such acts as tend to disturb the public peace? There can be no breach of the peace without a disturbance, acts disorderly or violent in their nature and the day on which such acts are committed will not alter the nature or quality of such acts in the eye of the law. The keeping open of a store or shop on Sunday, for the purpose of labor or traffic, is not an offense against the public peace, but an offense against public policy, punishable under the laws of this state. (Code, sec. 668, p. 437.)

The power then, conferred on the common council to

pass ordinances to punish offenses against the peace of the city does not include the power to pass ordinances to punish offenses of another and different character, and which do not tend to disturb the public peace. Power to pass ordinances to secure the peace of the city does not authorize an ordinance to prohibit the keeping open of stores and shops on Sunday; nor are the words used in this clause of the charter susceptible of any legal construction from which such power may be inferred. Nor are any of the cases referred to by counsel in contravention of the principle of construction which we have applied to the clause under consideration. All of them contain words in their charters specially conferring power to do the acts or things in question, or the power is plainly and legally deducible from the words used as applicable to the ends and objects to be accomplished by the act of incorporation.

As an illustration, in the case of *St. Louis* v. *Cafferty*, 24 Mo., 94, the terms used in the charter which the court held authorized the ordinance prohibiting the keeping open of stores and shops on Sunday, were "to maintain the peace, good government and order of the city, and the trade, commerce and manufactures thereof." The difference in the power conferred by this clause and the one under consideration is too manifest to require comment. And an examination of the cases cited by counsel, show that the terms used in the charters in respect to which the controversy had arisen, were fuller and broader and included the authority to exercise the power. (*Jones and Co.* v. *City of Richmond*, 18 Gratt., 523; *State* v. *Freeman*, 38 N. H., 426; Dillon on Municipal Corporations, sec. 330, and notes.)

In respect to the moral considerations which should influence and enforce the observance of Sunday, we have nothing to do, further than to declare what the law is, not what

it *should be.* That belongs to another department of government, which, so far as the state is concerned, has provided a law prohibiting the keeping open of any store, shop, &c., for purposes of labor or traffic on Sunday. (Criminal Code, p. 437.) From these views, it follows that the council is not invested with the power to pass the ordinance in question, and the judgment must be reversed.

Judgment reversed.