138 F.3d 767
 98 Cal. Daily Op. Serv. 1664, 98 Daily Journal
D.A.R. 2339
David PICRAY, Plaintiff-Appellant,
v.
Colleen SEALOCK; Norma Buckno; Dan Burk; Barbara Pyburn;
Benton County, a political subdivision of the State of
Oregon; S. Hammersley; Joe Bonitz; City of Albany, a
political subdivision of the State of Oregon, Defendants-Appellees.
 No. 96-36024.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 10, 1997.
Decided March 9, 1998.
 
 David C. Forge, Eugene, Oregon, for appellant.
 Matt Farmer, Springfield, Oregon, for appellees Burk, Pyburn and Benton County.
 Rives Kistler, Salem, Oregon, Deputy Attorney General, for appellees Sealock and Buckno.
 Gerald Warren, Salem, Oregon, for appellees Hammersley & Bonitz.
 Appeal from the United States District Court For the District of Oregon; Michael R. Hogan, District Judge, Presiding. D.C. No. CV-94-06433-MRH.
 Before: CANBY, T.G. NELSON and KLEINFELD, Circuit Judges.
 CANBY, Circuit Judge:
 
 
 1
 David Picray appeals the dismissal of his several 42 U.S.C. § 1983 claims arising from his arrest for trespass at an Oregon polling station. We affirm, finding that the claims all falter on either the relevant officials' qualified immunity, the absence of an offending local policy or custom, or a lack of basis in federal law.
 
 BACKGROUND
 
 2
 Oregon election law provides that "[n]o person, within a polling place, shall wear a political badge, button, or other insignia." O.R.S. § 260.695(4). The Secretary of State's Office interprets this section to prohibit buttons, badges, T-shirts, hats or other paraphernalia which could reasonably be understood to support or oppose a candidate or measure on the ballot.
 
 
 3
 On election day 1992, David Picray wore two buttons to the polls in North Albany, Benton County, that attacked a citizen's group backing a voter initiative then on the ballot. Several signs at the polling station indicated that campaign buttons could not be displayed on the premises. Benton County election volunteer Barbara Pyburn asked Picray to remove his buttons. He refused. Pyburn contacted her superior, Benton County election director Dan Burk, who confirmed that no one was to enter the polling place while wearing a political button. Burk contacted state election director Colleen Sealock, who advised him to call local police if a voter refused to comply with election laws.
 
 
 4
 Burk requested assistance from the Benton County Sheriff's Office; City of Albany Police Officer Sandy Hammersley was dispatched to the scene. Hammersley directed Picray's attention to the anti-campaigning signs. He threatened to sue, emphasizing that he "sued all the time and got a lot of money." He then began to protest loudly and was asked to keep his voice down so as not to disturb other voters. He eventually left the polling place in order to contact the local media.
 
 
 5
 When Picray returned, Hammersley had been joined by City of Albany Police Corporal Joe Bonitz. Picray approached the polling station. Hammersley and Bonitz told him that he would not be allowed to enter unless he removed his buttons. Picray attempted to force his way past the officers. He was arrested for criminal trespass and transported to the Benton County jail, where he was held for five hours and then released.[1] He was subsequently acquitted of the trespass charge. In a separate action, the Oregon Court of Appeals struck down the anti-campaigning statute under the free speech provision of the Oregon Constitution. Picray v. Secretary of State, 140 Or.App. 592, 916 P.2d 324 (1996), aff'd by an equally divided court, 325 Or. 279, 936 P.2d 974 (1997).
 
 
 6
 Picray sued Pyburn, Burk, Sealock, Hammersley, Bonitz, Benton County, the City of Albany and state election official Norma Buckno[2] ("defendants") pursuant to 42 U.S.C. § 1983. The district court dismissed all of Picray's federal claims with prejudice. Picray appeals the dismissal of his actions for false arrest and denial of liberty without due process of law. We address each of these claims in turn.
 
 DISCUSSION
 1. The due process claim
 
 7
 Picray contends that Oregon law does not permit an official either to exclude a person from a polling place for wearing political buttons or to arrest an elector for entering a polling place in disregard of an officer's orders. He contends that state law therefore creates a Fourteenth Amendment liberty interest in doing so, and that by arresting Picray, defendants deprived him of that interest without due process of law. We review de novo the district court's grant of summary judgment in favor of defendants. Wilson v. Monarch Life Ins. Co., 971 F.2d 312, 313 (9th Cir.1992).
 
 
 8
 Violation of state law, of itself, does not establish a deprivation of liberty without due process. See Ybarra v. Bastian, 647 F.2d 891, 892 (9th Cir.1981); accord Williams v. Treen, 671 F.2d 892, 900 (5th Cir.1982). Picray relies on the Hewitt v. Helms line of cases, which hold that "a State creates a protected liberty interest by placing substantive limitations on official discretion." Kentucky v. Thompson, 490 U.S. 454, 462, 109 S.Ct. 1904, 1909, 104 L.Ed.2d 506 (1989) (quoting Olim v. Wakinekona, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983)); see also Hewitt v. Helms, 459 U.S. 460, 470-71, 103 S.Ct. 864, 870-71, 74 L.Ed.2d 675 (1983). Picray contends that if his arrest was not authorized by Oregon law, it was beyond the defendants' discretion and an intrusion upon his federal liberty right.
 
 
 9
 Picray fails to account for the fact that Hewitt was substantially narrowed by Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), which shifted the focus of due process liberty claims from a "search for a negative implication from mandatory language" in a prison regulation to a more general search for punishment imposing "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483, 484, 115 S.Ct. at 2300. We assume for purposes of decision, however, that in other contexts a state statute can create a liberty interest protected by the due process clause. See Carlo v. City of Chino, 105 F.3d 493, 496-500 (9th Cir.1997). Here, however, Picray points to no substantive interest created by state law other than an implied right not to be arrested in particular circumstances. It is apparent that this claim is indistinguishable from a claim of false arrest-arrest without probable cause to believe that Picray was committing an offense for which state law authorized his arrest. The Fourth Amendment already prescribes standards for official conduct in this area. Where an amendment "provides an explicit textual source of constitutional protection against a particular sort of government behavior," it is that Amendment, not the guarantee of due process, that "must be the guide for analyzing" the complaint. Albright v. Oliver, 510 U.S. 266, 273, 114 S.Ct. 807, 813, 127 L.Ed.2d 114 (1994) (plurality opinion) (quoting Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989)).
 
 
 10
 Albright speaks directly to this case. It holds that the validity of an arrest must be analyzed under Fourth Amendment standards, not due process standards. See id. at 281, 114 S.Ct. at 817 (Kennedy, J., concurring in judgment) ("I agree with the plurality that an allegation of arrest without probable cause must be analyzed under the Fourth Amendment without reference to more general considerations of due process"); see also Baker v. McCollan, 443 U.S. 137, 144-47, 99 S.Ct. 2689, 2694-96, 61 L.Ed.2d 433 (1979) (finding that because the suspect's arrest and imprisonment conformed to Fourth Amendment guarantees, any remaining state claims were not cognizable under § 1983); United States v. James Daniel Good Real Property, 510 U.S. 43, 50, 114 S.Ct. 492, 499, 126 L.Ed.2d 490 (1993) (The Fourth Amendment's "balance between individual and public interests always has been thought to define the 'process that is due' for seizures of person or property in criminal cases.") (quoting Gerstein v. Pugh, 420 U.S. 103, 125 n. 27, 95 S.Ct. 854, 869 n. 27, 43 L.Ed.2d 54 (1975)).
 
 
 11
 Picray's due process claim was properly dismissed. The constitutionality of his arrest may only be challenged under Fourth Amendment standards.
 
 2. The false arrest claim
 
 12
 Picray's warrantless arrest does not violate the Fourth Amendment if the officers had probable cause to believe he had committed or was about to commit a crime. United States v. Del Vizo, 918 F.2d 821, 825 (9th Cir.1990). We review de novo probable cause determinations. Ornelas v. United States, 517 U.S. 690, 696-98, 116 S.Ct. 1657, 1662, 134 L.Ed.2d 911 (1996). Because the different defendants raise different defenses, we address Picray's claims by defendant.
 
 
 13
 a. The individual defendants
 
 
 14
 A government official is qualifiedly immune from § 1983 liability unless his conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Picray presents three reasons why the officers lacked probable cause to arrest him. He contends that each of these bases of immunity was clearly established at the time of his arrest. We disagree.
 
 
 15
 Oregon Revised Statutes § 260.695(4) provides that "[n]o person, within a polling place, shall wear a political badge, button, or other insignia." Picray contends that subsequent legislation imposing civil fines for violations of this statute decriminalized such violations and precludes the exclusion of the violator from a polling station. The district court concluded that the amendment does not negate but rather supplements criminal liability. It noted that Picray's interpretation would permit "electioneering at the poll[s] ... by anyone willing to pay an after-the-fact civil penalty." On appeal, Picray counters that legislative history indicates that the amendment was indeed meant to decriminalize campaigning at polling stations.
 
 
 16
 We need not decide who has the upper hand in this dispute. The individual defendants can be held liable only if the law was well established when they acted. Picray cites no judicial opinion or other authoritative construction of the statute that indicates it cannot be enforced by excluding the violator from a polling station. We also note that the statute's imperative language suggests that a person wearing a campaign button would be excluded from the polls. Under these circumstances, the individual defendants could have reasonably concluded that they acted lawfully when they barred Picray from the polling station for wearing a campaign button. See Act Up!/Portland v. Bagley, 988 F.2d 868, 871-72 (9th Cir.1993).
 
 
 17
 Picray next asserts that Art. II, § 13 of the Oregon Constitution grants electors immunity from arrest for trespass when they are on their way to the polls. That section provides that:
 
 
 18
 In all cases, except treason, felony, and breach of the peace, electors shall be free from arrest in going to elections, during their attendance there, and in returning from the same....
 
 
 19
 Picray argues that the offense of trespass does not meet this provision's exception for "breach of the peace." He relies on City of Corvallis v. Carlile, 10 Or. 139 (1882), which defines a breach of the peace as "a disturbance, acts disorderly or violent." Id., 10 Or. at 143.
 
 
 20
 Even were we inclined to find that a solitary decision more than a century old has "clearly established" the law for the present defendants, Carlile does not support Picray's argument. The undisputed facts are that Officers Hammersley and Bonitz stood before Picray, that they told him that he would not be allowed to enter the polling station until he removed his buttons, and that he attempted to force his way past the officers. Hammersley and Bonitz could reasonably have concluded that Picray's physical resistance to their commands constituted either a breach of the peace or "acts disorderly or violent."[3]
 
 
 21
 Picray also contends that his conduct does not qualify as trespass. Under Oregon law, "[a] person commits the crime of criminal trespass in the second degree if the person enters or remains unlawfully in or upon premises." O.R.S. § 164.245. To "enter or remain unlawfully" is to "enter or remain in or upon premises when the premises ... are not open to the public or when the entrant is not otherwise licensed or privileged to do so." O.R.S. § 164.205(3)(a). Picray claims that these provisions do not encompass his behavior.
 
 
 22
 Oregon v. Ocean, 24 Or.App. 289, 546 P.2d 150, 153 (1976), holds that premises are not considered "open to the public" with regard to a particular individual when that person previously has been barred from the property. Hammersley and Bonitz told Picray that he could not enter the polling station while wearing his buttons. When he subsequently did so, he entered premises from which he had previously been barred. The officers could reasonably have found that they had probable cause to arrest Picray for trespass. The fact that he was subsequently acquitted of that charge is not determinative of qualified immunity. See Baker v. McCollan, 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979) ("The Constitution does not guarantee that only the guilty will be arrested.").
 
 
 23
 None of Picray's asserted bases of immunity from arrest were "clearly established" at the time of his arrest. The defendants could reasonably have concluded that they were authorized to exclude Picray from the polling station for wearing political buttons and arrest him for entering against Hammersley and Bonitz' orders. Summary judgment was properly awarded to all of the individual defendants on the ground of qualified immunity.
 
 
 24
 b. The city and county defendants
 
 
 25
 Local governments are only liable under § 1983 for constitutional torts that amount to a custom or policy. Monell v. Department of Social Services, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Proof of random acts or isolated events does not satisfy the plaintiff's burden to establish a custom or policy. Thompson v. City of Los Angeles, 885 F.2d 1439, 1443-44 (9th Cir.1989).
 
 
 26
 Picray alleges that all of the actions taken against him constituted a custom or policy. The district court noted
 
 
 27
 Plaintiff argues ... that the City does not deny the existence of these policies in its present motion for summary judgment. This argument, if it can be called that, fails. First, the City did deny the allegations of Paragraph V of the Amended Complaint in its answer. Second, plaintiff bears the ultimate burden of proof on this issue, not the City.
 
 
 28
 ....
 
 
 29
 [P]laintiff has presented no evidence, aside from his own experience, to support the contentions of Paragraph V of the Amended Complaint.
 
 
 30
 Picray has not remedied these evidentiary shortcomings on appeal. He indicates no place in the record where he presented proof that the actions he challenges are either an official policy or iterated events that amount to a custom. Since Picray's isolated experiences, standing alone, cannot support Monell liability, summary judgment was properly awarded to the city and county defendants.
 
 
 31
 The district court's grant of summary judgment in favor of all defendants is
 
 
 32
 AFFIRMED.
 
 
 
 [1]
 Picray was not processed and released immediately because he refused to give his address and phone number to the booking officer
 
 
 [2]
 The source of Picray's complaint against Buckno is not clear from his appellate briefs, and he does not respond to the state's assertion that "factually he has no claim against Buckno." Given our disposition of this appeal, we need not resolve the matter
 
 
 [3]
 Our conclusion is buttressed by the fact that the Supreme Court has read the "breach of the peace" exception to federal legislators' immunity from arrest to encompass "all criminal offenses." Williamson v. United States, 207 U.S. 425, 446, 28 S.Ct. 163, 170, 52 L.Ed. 278 (1908). The Williamson Court found that the phrase "treason, felony, and breach of the peace" had a well-established meaning at common law. It quoted a 19th century treatise to the effect that "in England, the exception embraces all criminal matters whatsoever, and, of course, includes many cases which do not fall within the denomination either of treason, felony, or breach of the peace." Id. at 445, 28 S.Ct. at 170 (quoting Cushing's treatise on Constitutions)